**Linda F. COATES et al.,**
**Plaintiffs-Appellants,**

v.

**ILLINOIS STATE BOARD OF EDUCA-TION et al., Defendants-Appellees.**

No. 76–1997.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1977.

Decided June 20, 1977.

Rehearing and Rehearing En Banc
Denied Aug. 1, 1977.

Aldus S. Mitchell, Sophia H. Hall, Chicago, Ill., for plaintiffs-appellants.

William J. Scott, Atty. Gen., Mary F. Stafford, Asst. Atty. Gen., Chicago, Ill., William McD. Frederick, Julian E. Cannell, Peoria, Ill., James R. Schirott, Park Ridge, Ill., Richard T. Buck, Joliet, Ill., George B. Collins, Chicago, Ill., Nicholas E. Sakellariou, Joliet, Ill., Dale F. Conde, Rockford, Ill., Michael M. Mihm, State's Atty., Peoria, Ill., for defendants-appellees.

Before CUMMINGS, PELL and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

On October 8, 1975, plaintiff school children and their parents filed this school desegregation action on behalf of the class of all black citizens who reside within the geographical boundaries of certain school districts in Rockford, Peroia and Joliet, Illinois. Named as defendants were the Illinois Office of Education, the Illinois State Superintendent of Education, individual members of the Illinois State Board of Education (the three groups collectively termed the "state defendants"), the various school districts, the Superintendent of these school districts, the geographically pertinent Regional Boards of School Trustees, the Superintendents of these Regional Boards and the individual members of the Regional Boards. The complaint asserts subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(3). The Thirteenth and Fourteenth Amendments as well as Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.) are pleaded as causes of action under the 28 U.S.C. § 1331 subject-matter jurisdictional fount, and three provisions of the Civil Rights Acts of 1866, 1870 and 1871, 42 U.S.C. §§ 1981, 1983, 1988,[1] are pleaded in conjunction with the 28 U.S.C. § 1343(3) jurisdictional grant. A pendent state action under the Armstrong Act is also alleged. 1975 Ill.Rev.Stats. ch. 122, § 10-21.3.

The complaint seeks a declaratory judgment under 28 U.S.C. § 2201 that plaintiffs' constitutional rights have been violated, as well as an injunction against future violation. In addition, the plaintiffs ask that the expenditure of all federal funds by the Peoria, Rockford and Joliet school districts be enjoined pendente lite. Finally, the complaint prays that $50,000 damages be jointly and severally assessed against the individual defendants.

1. The complaint does not plead independent violations of 42 U.S.C. §§ 1981 and 1988 and these sections are not briefed. Therefore, they are deemed waived.

The response of the defendants to the complaint was mixed. Several defendants filed motions to dismiss for failure to state a claim and others answered the complaint. On August 3, 1976, the trial court held that the case failed to state a claim upon which relief could be granted "[b]ecause this complaint does not allege that the underlying condition of school segregation was caused, in whole or in part, by any purposeful action of any of the defendants * * *" (419 F.Supp. at 27). The cause was dismissed with prejudice. Judge Grady also expressed advisory views on the impropriety of joinder of separate school districts in one action. He further indicated that "the very fact of the separate districts, geographically distant from one another, make[s] this proposed class an implausible creature which could not possibly satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure" (*id.* at 28).[2]

■ The only facts available to us are those detailed in the complaint. In support of the motions to dismiss we take all well-pleaded facts as true, but we will not strain to find inferences favorable to the plaintiffs which are not apparent on the face of this civil rights complaint. *Metcalf v. Ogilvie*, 436 F.2d 361, 363 (7th Cir. 1970). Especially in the school desegregation area, conclusory pleading such as evidenced in this complaint is woefully inadequate. Direct linkage between the facts pleaded and the violation asserted must exist on the face of the complaint. Put another way, a "plaintiff is required to set forth specific illegal misconduct and resultant harm in a way which will permit an informed ruling whether the wrong complained of is of federal cognizance." *Duncan v. Nelson*, 466 F.2d 939, 943 (7th Cir. 1972), certiorari denied, 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152.

According to the complaint, the local school boards were required to prevent the segregation of school facilities under 1975 Ill.Rev.Stats. ch. 122, § 10–22.5.[3] Further, pursuant to the Armstrong Act, they were affirmatively required to change attendance units with a view to the prevention of future and elimination of preexisting segregation. 1975 Ill.Rev.Stats. ch. 122, § 10–21.3.[4] In 1971, under rules which had been adopted by the State Superintendent of Public Instruction,[5] he found that the

2. These advisory views were expressed "so that, if they [were] erroneous, [the court could] receive appropriate guidance on remand" * * "[i]n the event a reviewing court should deem the complaint sufficient" (419 F.Supp. at 28). By the order of December 30, 1976, we directed that it would not "be necessary for counsel to address the problem of proper joinder and the problem of whether or not this is a proper class action. * * * " This was because if plaintiffs' theory of liability was correct, specific facts peculiar to each district would have been unnecessary to a finding of liability, although undoubtedly necessary at the remedy stage.

3. Section 10–22.5 of the School Code in pertinent part provides the school board has the duty:
"To assign pupils to the several schools in the district; to admit non-resident pupils when it can be done without prejudice to the rights of resident pupils and provide them with any services of the school including transportation; to fix the rates of tuition in accordance with Section 10–20.12a, and to collect and pay the same to the treasurer for the use of the district; but no pupil *shall* be excluded from or segregated in any such school on account of his color, race, sex or nationality. * * * "

4. The Armstrong Act provides the school board has the duty:
"To establish one or more attendance units within the district. As soon as practicable, and from time to time thereafter, the board *shall* change or revise existing units or create new units in a manner which will take into consideration the prevention of segregation and the elimination of separation of children in public schools because of color, race or nationality. All records pertaining to the creation, alteration or revision of attendance units shall be open to the public." (Emphasis supplied) 1975 Ill.Rev.Stats. ch. 122, § 10–21.3.

5. Although not detailed in the complaint, the state defendants inform us that a set of standards promulgated pursuant to 1975 Ill.Rev. Stats. ch. 122, § 2–3.6 under the title "Rules Establishing Requirements and Procedures for the Elimination and Prevention of Racial Segregation in Schools" was applied in finding the defendant school districts to be segregated. Neither a copy of these Rules nor of the State Superintendent's finding of segregation is included in the record.

named defendant school districts "were in violation of the laws of the State of Illinois because of segregation and discrimination within said school districts" (Complaint ¶ 22). The complaint asserts that plaintiffs have been denied equal educational opportunities because of defendants' failure and refusal to correct the segregation and discrimination in the schools in the named Rockford, Peoria and Joliet school districts.

The State Board of Education has duties which "shall encompass all duties currently delegated to the Office of the Superintendent of Public Instruction and such other duties as the General Assembly shall designate." 1975 Ill.Rev.Stats. ch. 122, Section 1A–4C. The Superintendent of Public Instruction has the duty to "supervise all the public schools in the State." Section 2–3.3. In discharge of this duty, the Superintendent is granted the power, and indeed the resulting duty, to "make rules necessary to carry into efficient and uniform effect all laws for establishing and maintaining free schools in the State." Section 2–3.6. Certain sections of Article 10 of the School Code, the organic statute providing for local school boards with various powers and duties, are plainly "laws for establishing and maintaining free schools in the State." In particular, the Armstrong Act (Section 10–21.3) which sets forth the local school board's duties with respect to attendance units and Section 10–22.5, which sets forth the local school board's powers with respect to the assignment of pupils, are such laws. Therefore, under Section 2–3.6 the State Superintendent has the power to make "rules necessary to carry into efficient and uniform effect" the local school board's charge under 10–21.3 and 10–22.5. The only extrinsic limit on the State Superin-

tendent with respect to the regulations he may issue to effectuate these provisions is the anti-busing clause of Section 10–22.5. See note 11 *infra.*

Manifestly, the statutory scheme does not contemplate that the State Superintendent discharge a "hands on" responsibility with respect to attendance units and pupil assignment. Actual implementation is, of course, the province of the local school boards within the guiding boundaries established by any Section 2–3.6 regulations which the State Superintendent has promulgated. Thus the State Superintendent has an overseer's responsibility with respect to attendance units and pupil assignment, and his discharge of this responsibility by the 1971 citation of the defendant school districts seems to have been the triggering event in this lawsuit. Needless to say, the actual and primary implementational duties under these Sections reside with the local boards who possess the normal sort of discretion usually inherent to an administrative body.

I.

Read liberally,[6] the complaint alleges a federal statutory school segregation claim under Title VI of the Civil Rights Act of 1964, a constitutional claim under the Thirteenth and Fourteenth Amendments and a state statutory claim under the Armstrong Act. Since federal jurisdiction over the Armstrong Act claim is strictly pendent to the alleged federal claims, we must initially determine whether a federal cause of action exists. To avoid unnecessary constitutional adjudication, we will construe the Title VI claim first.[7] *Ashwander v. Tennessee Val-*

6. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; *Ybarra v. City of San Jose,* 503 F.2d 1041 (9th Cir. 1974).

7. The pled violation of Title VI of the Civil Rights Act of 1964 is not developed in the briefs, but it is mentioned therein. Thus while we do not have the benefit of argument upon it from either side, the point technically cannot be deemed waived.

Indeed, in *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 517

F.2d 409, 410 (7th Cir. 1975), this Court leapt directly to the constitutional question since the statutory claim then appeared to be out of the case. First the district court had held that "[n]o specific section of the Fair Housing Act is referred to in the pleadings and none seem applicable to the facts of this case." 373 F.Supp. 208, 209 (N.D.Ill.1974). Moreover, the appellant's brief before us in *Arlington Heights* did not develop a Fair Housing Act theory, barely mentioning the Act in its 59-page brief. Nevertheless, the Supreme Court declared that

*ley Authority,* 297 U.S. 288, 341, 56 S.Ct. 588 (Brandeis, J., concurring).

## II.

▉ The complaint alleges that the defendant Rockford, Peoria and Joliet school districts were receiving federal funds during all pertinent times. Section 601 of Title VI of the Civil Rights Act of 1964 provides:

"No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Section 601 has been used in the equal education opportunity area. *Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1; *Bossier Parish School Board v. Lemon,* 370 F.2d 847, 851–852 (5th Cir. 1967). But even if *arguendo* Section 601 can be read to imply a private cause of action against administrative actions or inactions having the effect of discriminating " 'in the availability or use of any academic * * * or other facilities of the grantee or other recipient' " [8] even though no purposeful design is present (cf. *International Brotherhood of Teamsters v. United States,* —— U.S. ——, 97 S.Ct. 1843, 52 L.Ed.2d 396), the discrimination must be the actual causative resultant of the actions under scrutiny. Cf. *Pasadena City Board of Education v. Spangler,* 427 U.S. 424, 434, 96 S.Ct. 2697, 49 L.Ed.2d 599. When, under state imposed standards, federal and state money is spent on equality of treatment, by providing students with the same facilities,

textbooks, teachers and curriculum, the ancillary fact of racial imbalance does not state a claim under Section 601. Cf. *Lau v. Nichols,* 414 U.S. at 566, 94 S.Ct. 786. And without a recitation of how specific prior actions have caused specified discriminatory effects, the mere fact that defendant school districts were cited as being segregated by the State Superintendent of Public Instruction in 1971 (Complaint ¶ 22) does not require affirmative action under Section 601.[9] See *Soria v. Oxnard School District Board of Trustees,* 386 F.Supp. 539 (C.D.Calif. 1974); cf. *Duncan v. Nelson,* 466 F.2d 939, 943 (7th Cir. 1972), certiorari denied, 409 U.S. 894, 93 S.Ct. 116, 34 L.Ed.2d 152.

## III.

Since Section 601 does not provide a cause of action, we must reach the constitutional question. In *Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597, the Supreme Court has recently underscored ·the absolute necessity of segregative intent to a successful constitutional challenge to school segregation:

"The school desegregation cases have also adhered to the basic equal protection principle that the invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose. That there are both predominately black and predominately white schools in a community is not alone violative of the Equal Protection Clause. The essential element of *de jure* segregation is 'a current condition of segregation resulting from intentional state action.' *Keyes v. School Dist. No. 1,* 413 U.S. 189, 205 [208, 93 S.Ct. 2686, 2696,

the "Court of Appeals, however, proceeding in a somewhat unorthodox fashion, did not decide the statutory question" and remanded the case for us to consider the statutory claims. 429 U.S. 252, 271, 97 S.Ct. 555, 566, 50 L.Ed.2d 450. Therefore, we feel constrained to pass on the Title VI claim even though we regret having to pass on the issue without the benefit of substantive argument by the parties.

8. See 45 CFR § 80.5(b) of the regulations of the Department of Health, Education and Welfare quoted in *Lau, supra,* 414 U.S. at 567–568, 94 S.Ct. 786, 789.

9. The complaint alleges that the Rockford, Peoria and Joliet school districts are segregated as a matter of state law. However, the complaint does not allege that any defendant did any deliberate, affirmative or wrongful act which caused this racial imbalance in the first instance. Plaintiffs seek to have the defendants held liable for a state-found condition of segregation by reason of the existence of the condition itself and not because of any responsibility for its creation. Such a finding without more is not a talisman which can invoke Title VI affirmative remedial action.

37 L.Ed.2d 548, 561] (1973). 'The differentiating factor between *de jure* segregation and so-called *de facto* segregation * * * is *purpose* or *intent* to segregate.' *Id.*, at 208, [93 S.Ct. 286]. See also *id.*, at 199, 211, 213, [93 S.Ct. 286]." As we said in *Lawlor v. Board of Educ. of Chicago*, 458 F.2d 660, 662 (7th Cir. 1972), certiorari denied, 413 U.S. 921, 93 S.Ct. 3045, 37 L.Ed.2d 1043 the "mere fact of imbalance of races is not alone a deprivation of equality of educational opportunity in the absence of purposeful invidious discrimination." Manifestly, one must of "necessity * * * establis[h] that school authorities have in some manner caused unconstitutional segregation * * *." *Pasadena City Board of Education, supra,* 427 U.S. at 434, 96 S.Ct. at 2704.

■ Here the complaint does not allege segregative intent. Plaintiffs seek to avoid the dictate of *Washington v. Davis* by the novel argument that by virtue of the affirmative duty to eliminate *de facto* segregation imposed as a matter of state law by the Armstrong Act, segregative intent must be conclusively presumed to exist since *de facto* segregation concededly continues in the named defendant school districts. This innovative theory cannot withstand analysis. "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450. See generally Note, Reading the Mind of the School Board: Segregative Intent and the De Facto/De Jure Distinction, 86 Yale L.J. 317 (1976). In this inquiry we must steadfastly eschew any "readiness to impute to school officials a segregative intent far more pervasive than the evidence justifie[s]." *Austin Independent School District v. United States*, 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 60 (Powell, J., concurring). Even if we read the complaint as alleging that absolutely nothing had been done to discharge the Armstrong Act's affirmative duty to desegregate,[10] this is not the equivalent of segregative intent as a matter of law. Mere failure to implement without more is not enough. For under the Armstrong Act, which has been construed as applying to *de facto* segregation, the "school board [can] conclud[e], based on considerations of traffic hazards, walking distances, finances and classroom capacity, that existing attendance unit boundaries should not be revised." *Tometz v. Board of Education, Waukegan City School District No. 61*, 39 Ill.2d 593, 602, 605, 237 N.E.2d 498, 505 (1968).[11] Therefore since segregative intent is not pleaded and since the facts pleaded do not make out the required segregative intent as a matter of law, the complaint does not give rise to a constitutional claim. *Wash-*

10. Fairly read, the complaint simply says that the defendants have failed and refused to eliminate segregation totally rather than that they have failed to take any steps whatsoever to move towards the elimination of segregation. Indeed, in their motion to dismiss, the state defendants "submit that they have engaged in many efforts, beginning in 1971, to bring the Defendant School Districts into compliance with the laws of the United States and the State of Illinois and that they welcome any assistance which this Court may render in that regard. Consequently, the State Defendants will cooperate with the Plaintiffs in their effort to alleviate any discriminatory practices which may exist in the Defendant School Districts."

11. Moreover, a limiting construction of the Armstrong Act is mandated by the later provision of 1975 Ill.Rev.Stats. ch. 122, § 10–22.5:

"Nothing herein shall be construed to permit or empower the State Superintendent of Public Instruction to order, mandate or require busing or other transportation of pupils for the purpose of achieving racial balance in any school."

Since there is no allegation in this case of "any action in the conduct of the business of the school board which was intended to, and did in fact, discriminate against minority pupils, teachers or staff", the antibusing clause of Section 10–22.5 would appear to be constitutional under the facts of this case. *Dayton Board of Education v. Brinkman*, —— U.S. ——, ——, 97 S.Ct. 2766, 53 L.Ed.2d 851. Unlike the antibusing provision in *North Carolina State Board of Education v. Swann*, 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586, the one in this case does not prohibit busing which is necessary to remedy a violation of the Constitution.

 

*ington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597.

█ Because no federal claim has been asserted, we, of course, have no power to retain jurisdiction over any putatively well-pleaded state action founded on the Armstrong Act. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218. C. Wright, Federal Courts 74–75 (3d ed. 1976). Therefore the dismissal of the entire cause must be affirmed.

### IV.

█ Judge Grady dismissed the cause below with prejudice. Although the plaintiffs never sought leave to file an amended complaint,[12] plaintiffs maintained at oral argument that they should have an opportunity to plead segregative intent. Rule 15(a) of the Federal Rules of Civil Procedure. Our review is to determine whether the district judge committed error. We agree that he correctly held the complaint insufficient. He did not abuse his discretion in denying leave to amend the complaint, because such leave was never sought.[13] Under these circumstances, we can find no basis for disturbing his judgment in any way. See *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222. No injustice will be done by giving the district court's judgment its due in accordance with the usual procedure. This is not a class action.[14] Our decision will not bar a later action by other parties if discriminatory purpose can be properly alleged and proved, and plaintiffs here will benefit by any declaratory or injunctive relief that may be granted in such an action.

**12.** At oral argument, plaintiffs' counsel explained that leave to amend was not sought because she mistakenly thought the very fact of dismissal with prejudice prevented her from seeking leave to amend. Moreover, counsel for Winnebago County expressed his opinion that the district court erred in not permitting an amended complaint.

**13.** Prior to the filing of the instant complaint, the plaintiffs filed an action in the same district court which (except for the addition of the regional boards of education and the Joliet students and school districts as new parties) the state defendants and the Peoria school district

The judgment of the district court is affirmed.

represent as identical to the present case. This complaint was dismissed for improper venue because it named no defendants residing in the Northern District of Illinois, Eastern Division, since the cause did not arise there. The plaintiffs represent that rather than appeal that disposition, they chose to refile the present action on October 8, 1975, but naming additional defendants.

**14.** The complaint contained class allegations but the district did not certify any class. The action is therefore brought by the named plaintiffs only.