**Debra L. McWRIGHT, Plaintiff,**

v.

**Lamar ALEXANDER, Secretary, United States Department of Education, United States Department of Education, Office of Civil Rights, Defendants.**

No. 90 C 1531.

United States District Court, N.D. Illinois, E.D.

Aug. 19, 1991.

Henry Lowell Mason, III, Holly A. Harrison, Sidley & Austin, Chicago, Ill., for plaintiff.

Fred L. Foreman, U.S. Atty.'s Office, Chicago, Ill., Carole Jeandheur, Ann M. Gulyassy, U.S. Dept. of Justice, Civil Div.–Federal Programs Branch, Washington, D.C., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the motion of Lamar Alexander, Secretary of the United States Department of Education ("Secretary"), to dismiss the complaint of plaintiff, Debra L. McWright ("McWright"), or in the alternative, for summary judgment. For the reasons that follow, the motion to dismiss is granted.[1]

## FACTS

McWright was employed by Office of Civil Rights ("OCR") of the United States Department of Education as an equal opportunity specialist in its Chicago office between February 14, 1977 and March 17, 1983. She had contracted polio at age 1–½ years, leaving her with various permanent physical handicaps, including an inability to bear children.[2] OCR hired McWright as a

---

1. The plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment was signed by attorney Kathleen L. Roach. According to the docket sheet in this case, Roach has not filed her appearance and is therefore not an attorney of record. Her signing of the memorandum violated both Fed.R.Civ.P. 11, which requires that every pleading be signed by an attorney of record, and Rule 3.14(b) of the General Rules of the United States District Court for the Northern District of Illinois, which requires the filing of appearance forms by each attorney representing a party in a district court proceeding. Rule 11 provides for striking any offending pleading in addition to other sanctions, while Rule 3.14(e) authorizes the imposition of a fine. In view of the disposition of this case, the court finds it unnecessary to consider such penalties for Roach's violation.

2. The facts herein are drawn from plaintiff's second amended complaint, and for purposes of this motion, are presumed to be true.

"handicapped individual" pursuant to § 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791.

The dispute in this case concerns McWright's requests for annual and extended leave without pay from OCR to care for the child she and her spouse adopted. McWright initially informed her immediate supervisor, OCR branch chief Catherine Martin ("Martin"), in July 1982 that she was seeking an adoption and would seek maternal child care extended leave if a child were placed with her and her husband. In September, McWright told Martin and Martin's supervisor, Mary Francis O'Shea ("O'Shea"), that McWright had been accepted as an adoptive parent. In November 1982, McWright filed applications for annual leave of four weeks and extended leave without pay, but did not list any particular dates because she did not yet know when the child placement would occur. Total leave time would be about four months. In December 1982, Martin therefore gave McWright three options: McWright could take immediate annual and extended leave, she could specify a future certain date to begin them, or she could take them on short notice in the future on the condition that she complete her then-pending assignments before taking them. Under the circumstances, McWright considered the first two alternatives unacceptable, and she therefore agreed to the third. The next day, Martin gave McWright three new civil rights violation case assignments, which might have taken McWright a year or more to complete, according to McWright.

About two weeks later, McWright learned on January 5, 1983 that a child would soon be available and resubmitted her leave application, seeking four weeks annual leave from January 11 to February 7, 1983, and seeking three months extended leave without pay from February 8 to May 17, 1983. Martin denied the request for annual leave on January 6, 1983, and O'Shea denied the request for leave without pay the following day.

The OCR gave McWright four days off with pay after an adoptive son was placed with McWright and her spouse on January 11, 1983. McWright's renewed request for leave was informally approved on February 7, 1983, upon condition that she work at home during the annual leave period. She accepted and began her annual leave the following day and worked at home. Her request for leave without pay from March 10 to June 29 was approved unconditionally on February 28, 1983. However, on March 10, 1983, Martin informed McWright that she must complete her pending civil rights violation assignments before her three month leave could begin, and Martin submitted the necessary paperwork requesting cancellation of McWright's leave without pay.

McWright alleges that she was forced to make immediate child care arrangements for her son, and she suffered physical and emotional exhaustion from returning to work at the OCR. She informed her supervisors on March 17, 1983 that she would be forced to resign unless she received leave without pay, but OCR denied her request for leave. McWright resigned her position with OCR on March 17, 1983.

Count I of McWright's second amended complaint alleges that OCR failed to accommodate her handicap—her inability to bear children—when it refused to waive two conditions it normally required for maternal child care leave but which McWright was unable to meet: medical certification and specification in advance of the leave period.

Count II of the second amended complaint alleges disparate treatment; that McWright's leave requests were treated less favorably than requests by biological mothers. She alleges that the extended leave requests of biological mothers were consistently granted, that biological mothers were not required to complete their pending work beforehand, and that biological mothers were not required to work at home without compensation while on leave.

As a result of the alleged failure to accommodate and disparate treatment, McWright claims that her working conditions became unreasonable, and her resig-

nation therefore constituted a constructive discharge.

### DISCUSSION

■ The defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). As noted above, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe on behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411 (7th Cir. 1986). However, the court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint. *Coates v. Illinois State Board of Education,* 559 F.2d 445, 447 (7th Cir. 1977). The plaintiff need not set out in detail the facts upon which the claim is based, but must allege sufficient facts to outline the cause of action. *Doe,* 788 F.2d 411. The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus,* 603 F.2d 1266 (7th Cir. 1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.,* 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.,* 795 F.2d 591, 594 (7th Cir.1986).

■ Sec. 504(a) of the Rehabilitation Act, 29 U.S.C. § 794(a), provides that "[n]o otherwise qualified individual with handicaps ... shall, *solely by reason of his or her handicap* ... be subjected to discrimination ... under any program or activity conducted by any Executive agency ..." (emphasis added). The "central purpose" of the statute "is to assure that handicapped individuals receive 'evenhanded treatment' in relation to handicapped individuals." *Traynor v. Turnage,* 485 U.S. 535, 548, 108 S.Ct. 1372, 1381–82, 99 L.Ed.2d 618 (1988) (quoting *Alexander v. Choate,* 469 U.S. 287, 304, 105 S.Ct. 712,

721–22, 83 L.Ed.2d 661 (1985)). Unintentional, as well as purposeful, discrimination against the handicapped is barred, although not every sort of disparate impact is sufficient to fall within the statute's ambit. *Choate,* 469 U.S. at 297–99, 105 S.Ct. at 718–19. A federal agency, like a federal grantee, is required to provide handicapped employees with "meaningful access" to benefits offered by the agency. *Id.* at 301, 105 S.Ct. at 720. To that end, the agency must make "reasonable" efforts to accommodate handicapped employees, but need not "make 'fundamental' or 'substantial' modifications" in its programs. *Id.* at 300–01, 105 S.Ct. at 720.

■ In this case, causal nexus between the alleged discrimination suffered by McWright and her inability to bear a child is too attenuated to meet the requirements of the Rehabilitation Act. McWright's difficulties stemmed from her decision to adopt a child—a family decision involving matters outside the work place and not directly related to her employment. The accommodation requested by McWright was not related to any specific condition of her work; McWright merely sought access to her employer's maternity leave policy. Although McWright has alleged a causal nexus between her disability and her inability to bear children, she does not allege that she was treated any differently from non-handicapped workers who decided to adopt children. Thus, assuming *arguendo* that she was subjected to discrimination because of her decision to adopt a child, she was not subjected to discrimination "solely by reason of [her] handicap."

McWright argues persuasively that her personal family decision to adopt placed her in a difficult situation at her job—a situation not shared by biological mothers. Because she was not able to identify in advance the period in which she desired to take her leave, she was not able to meet the requirements of her employer's maternity leave policy. Construing McWright's allegations in the light most favorable to her, OCR gave her what appears to have been a Hobson's choice: take immediate leave (which would do her little good with-

out a baby for some or perhaps all of the period), specify a date certain to begin her leave (which was difficult by the nature of her adoption process), or take leave on short notice in the future on the condition that she finish all then-pending assignments. The situation in which McWright found herself was not one shared by biological mothers. Nevertheless, the issue relevant to this action is not whether McWright was in a worse position than biological mothers, but whether OCR failed to make reasonable exceptions to its policy to accommodate her handicap. Whether the arrangement offered to McWright was "reasonable" and whether it gave McWright "meaningful access" to the maternity leave policy are fact issues which may not be resolved either on a motion to dismiss or a motion for summary judgment. However, because the court finds the nexus issue dispositive, it need not address these subsequent fact issues.

In sum, the allegations in McWright's complaint, if proven, might arguably show that OCR treated her cold heartedly or that her employer's maternity leave policy had limitations and was not sensitive to employees, handicapped and not handicapped, who chose to adopt children. However, these allegations do not show that the OCR leave policy discriminated against McWright on the basis of her handicap. Any remedy which McWright may have against OCR for its treatment of her is not found within the congressional language of 29 U.S.C. § 794.

## CONCLUSION

For the reasons stated above, the defendant's motion to dismiss the plaintiff's second amended complaint is granted.

IT IS SO ORDERED.