ILLINOIS LEGISLATIVE REDISTRICTING COMMISSION, et al., Plaintiffs,

v.

Gary J. LaPAILLE, et al., Defendants.

Joseph GARDNER, Lovana Jones, Dan Barreiro, William Shephard, Jr., John Lee Johnson, Gwendolyn Scott, Laura Barth, Warren Dorris, Marvin French, Jayme Cain, Percy Conway, Joseph Belman, Luis Albarasin, Crotis Teague, Jr., Henry Landrau, Carolyn Toney, Fred Smith, Charlie Wilson, Jr., and Bobby E. Thompson, on their own behalf and on behalf of all others similarly situated, Counter–Plaintiffs,

v.

ILLINOIS LEGISLATIVE REDISTRICTING COMMISSION, Al Jourdan, Frank Watson, Robert Churchill, Gene Hoffman, Dallas Ingemunson, George H. Ryan, sued in his official capacity as Illinois Secretary of State, and Illinois State Board of Elections, Counter–Defendants.

No. 91 C 6318.

United States District Court, N.D. Illinois, E.D.

Jan. 24, 1992.

Steven Francis Molo, Dan K. Webb, Catherine W. Joyce, Thomas Vernon Skinner, Winston & Strawn, Chicago, Ill., James Robert Schirott, Schirott & Associates, P.C., Itasca, Ill., for Illinois Legislative Redistricting Com'n, Al Jourdan, Frank Watson, Robert Churchill, Gene Hoffman, Dallas Ingemunson.

Jeffrey D. Colman, Thomas Shane O'Neill, Jenner & Block, Chicago, Ill., for Illinois Legislative Redistricting Com'n, Al Jourdan, Frank Watson, Gary J. LaPaille, Bruce Crosby, Miguel Del Valle, Jim McPike, Jerome Joyce, Eartharin Cousin, Tom Lyons, Roland W. Burris, Joseph Gardner, Robert L. Lucas, Lovana Jones, Dan Barreiro, William Shepard, Jr., John Lee Johnson, Gwendolyn Scott, Laura Barth, Warren Dorris, Marvin French, Jayme Cain, Percy Conway, Joseph Belman, Luis Albarasin, Crotis Teague, Jr., Henry Landrau, Carolyn Toney, Fred Smith, Charlie Wilson, Jr., Bobby E. Thompson, Henry Martinez, Roberto Gonzalez, Anita Garcia, Maria A. Morales, Marta Caldero, Consuelo Zemaitis, J. Richard Mota, Dave Duran, Teresa Fraga Orosco, Beverly Area Planning Ass'n, William Gainer, Mt. Greenwood Civic Ass'n, Curt Mentzer, Paula Derbak, Sharon Hanlon, Thomas C. Hynes, Jeremiah Joyce, James Keane, Thaddeus Lechowicz, Robert J. Bugielski, Polish American Congress, Inc., Rebecca W. Owens, Gay E. Bruhn, Mary Finger, Marisa L. L'Heureux, Carol Travis, Wilfred G. Stewart, Mary Ellen Smyth, Sara Tompson, Mary Mari Anna Murphy, Ava George, Sandra M. Scott.

Richard J. Prendergast, Richard J. Prendergast, Ltd., Chicago, Ill., for Gary J. LaPaille.

Matthew J. Piers, Jonathan A. Rothstein, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, Ill., for Miguel Del Valle.

Joseph E. Tighe, Richard J. Prendergast, Ltd., Chicago, Ill., for Jom McPike, Jerome Joyce, Eartharin Cousin, Tom Lyons.

James R. Carroll, Roger Philip Flahaven, Illinois Atty. General's Office, Chicago, Ill., for Roland W. Burris.

Robert L. Tucker, Tucker, Watson, Butler & Todd, Joseph E. Tighe, Richard J. Prendergast, Ltd., William J. Harte, Stephen L. Garcia, Courtney Carlton Nottage, William J. Harte, Ltd., Chicago, Ill., for Joseph Gardner, Lovana Jones, Dan Barreiro, William Shepard, Jr., John Lee Johnson, Gwendolyn Scott, Laura Barth, Warren Dorris, Marvin French, Jayme Cain, Percy Conway, Joseph Belman, Luis Albarasin, Crotis Teague, Jr., Henry Landrau, Carolyn Toney, Fred Smith, Charlie Wilson, Jr., Bobby E. Thompson.

## ORDER

NORGLE, District Judge.

Before the court is the motion of the counter-plaintiffs to dismiss, or alternatively for summary judgment on, the counterclaims. For reasons that follow, the motion is granted in part, denied in part, and reserved in part.

## FACTS

This action arises from efforts to redistrict the Illinois General Assembly following the 1990 federal census. The initial complaint was filed by the Illinois Legislative Redistricting Commission and its Republican majority members on October 4, 1991, seeking a declaration that the redistricting plan which the commission passed that day complied with relevant federal and state laws.[1] A parallel case, challenging the redistricting plan, was filed by the Illinois Attorney General on October 11, 1991 in the Illinois Supreme Court. That court remanded the redistricting plan to the Redistricting Commission on December 13, 1991 for hearings and consideration of alternative plans. *People ex rel. Burris v. Ryan*, 147 Ill.2d 270, 167 Ill.Dec. 893, 588 N.E.2d 1023 (1991). The commission held hearings from January 4 through 6, 1992,

and passed a modified redistricting plan on January 6, 1992. The Illinois Supreme Court approved the modified plan on January 10, 1992 and issued an opinion explaining its ruling on January 14, 1992. *People ex rel. Burris v. Ryan*, 147 Ill.2d 270, 167 Ill.Dec. 903, 588 N.E.2d 1033 (1992).

Nineteen defendants in this case, all of whom were intervenors in the Illinois Supreme Court case, filed the three instant counterclaims on January 17, 1992. The first counterclaim (Count I) alleges that African–American communities in at least five House of Representatives districts and three Senate districts in the Chicago area would allegedly be denied a fair opportunity to elect candidates of their choice, and minority communities elsewhere in the state were fractured, all in violation of the Voting Rights Act, 42 U.S.C. § 1973 *et seq.*. The second counterclaim (Count II) alleges that the modified redistricting plan is the result of partisan gerrymandering which disproportionately benefits the Republican Party, in violation of the counter-plaintiffs' 14th Amendment equal protection rights and their 15th Amendment voting rights. The third counterclaim (Count III) alleges that the Redistricting Commission failed to conduct timely hearings or provide opportunities for meaningful public input into the redistricting process, and that it delayed the case in the Illinois Supreme Court, in violation of the counter-plaintiffs' 14th Amendment due process rights.

The counter-defendants moved on January 21, 1992 to dismiss, or alternatively for summary judgment on, all the counterclaims.

## DISCUSSION

Due to the need for expedited disposition of this litigation, the court will immediately rule on the counter-defendants' motion to the extent feasible under Federal Rule of Civil Procedure 12(b)(6), while reserving its ruling on any remaining issues until after

---

1. Additional background information on the Redistricting Commission and this litigation can be found in this court's prior opinion allowing the plaintiffs to file a third amended complaint. *Illinois Legis. Redist. Comm'n v. LaPaille*, 782 F.Supp. 1267 (N.D.Ill.1991).

the counter-plaintiffs have had an opportunity to respond.

On a motion to dismiss under Rule 12(b)(6), the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). The court, however, need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint. *Coates v. Illinois St. Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir. 1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transp. Servs., Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

The counter-defendants contend that Count I of the counterclaims—which apparently raises a minority vote dilution claim under § 2 of the Voting Rights Act, 42 U.S.C. § 1973—is invalid because it does not allege the three threshold elements of such a claim set forth in *Thornburg v. Gingles*, 478 U.S. 30, 50–51, 106 S.Ct. 2752, 2766–67, 92 L.Ed.2d 25 (1986). Those elements are (1) that the minority group is large enough to constitute a majority in a single-member district, (2) that the minority is politically cohesive, and (3) that the white majority must vote as a bloc to a sufficient extent that it will usually defeat the candidate preferred by the minority. *Id.; see also Chisom v. Roemer*, — U.S. ——, 111 S.Ct. 2354, 2362–64, 115 L.Ed.2d 348 (1991) (results test; intent showing unnecessary).

*Gingles,* however, involved a challenge to multi-member districts, while this case involves single-member districts. Application of the three-part *Gingles* test in § 2 Voting Rights Act challenges to single-member district boundaries is questionable. *See Chisom,* 111 S.Ct. at 2365 (requiring both minority inability to elect candidates of their choice and less minority opportunity to participate in the political process, based on the totality of circumstances); *Gingles,* 478 U.S. at 46 n. 12, 106 S.Ct. at 2764 n. 12 (no decision on what standards apply to single-member district cases where minority groups are not large or compact enough to constitute a majority in any district); *Armour v. State of Ohio,* 775 F.Supp. 1044, 1052 (N.D.Ohio 1991)) (three-judge panel) (rejecting application of *Gingles* pre-conditions to claim that single-member districts were racially gerrymandered).

■ The counter-plaintiffs essentially allege in Count I that several Chicago-area districts are illegal, even though these districts contain seemingly "safe" 65 percent African–American majorities, and that some downstate districts fracture minority communities, even though there are insufficient minority members in these areas to constitute a majority in any of these downstate districts. It is not clear, based on the present record, that either of these components of Count I are invalid. The counter-plaintiffs might be able to show that minority voting rights were illegally diluted due to the configurations of either the "safe" districts or the downstate districts with relatively small minority populations. *See Armour,* 775 F.Supp. at 1052 (actionable dilution claim does not require that minority members could constitute a majority in a single district). Therefore, the motion to dismiss Count I is denied.

■ Counter-plaintiffs' Count II is a partisan gerrymandering claim. To support such a claim under the 14th Amendment equal protection clause, the counter-plaintiffs must show "both intentional discrimination against an identifiable political group and an actual discriminatory effect on that group." *Davis v. Bandemer,* 478

U.S. 109, 127, 106 S.Ct. 2797, 2808, 92 L.Ed.2d 85 (1986) (plurality opinion). A lack of proportional representation, however, is insufficient; "unconstitutional discrimination occurs only when the electoral system is arranged in a manner that will consistently degrade a voter's or a group of voters' influence on the political process as a whole." *Id.* at 132, 106 S.Ct. at 2810. An intent to disadvantage one political party will also not suffice. *Id.* at 139, 106 S.Ct. at 2813–14. The complaining political party members must in fact be disadvantaged, and to a greater extent than loss of control of the General Assembly after a single election. *Id.* at 139–40, 106 S.Ct. at 2813–14.

Count II alleges that Illinois is a "swing" state that tends to vote for Republican Party candidates in presidential election years and for Democratic Party candidates in non-presidential election years. The final redistricting plan, however, allegedly creates an excessive number of Republican-leaning districts, even for non-presidential election years. The counter-plaintiffs assert that of the 118 Illinois House of Representatives districts, up to 59 are "safe" for the Republicans, while there may be as few as 38 "safe" seats for the Democrats. The 59 Illinois Senate districts allegedly include 27 or 28 "safe" Republican seats. Another allegedly unfair aspect is the combination of Democratic incumbents, forcing them to run against each other, in 12 House districts and four Senate districts.

Assuming the truth of the counter-plaintiffs' claims, however, as the court must on a motion to dismiss, it is not clear that the Democrats will lose control of the General Assembly, much less that they will be unable to effectively influence legislative outcomes. Moreover, there is no allegation that any particular harm has already befallen the Democrats, except for forcing some of their incumbents to run against each other. That result is a common result of politically motivated redistricting, and is hardly sufficient to establish an equal protection violation. *See Davis,* 478 U.S. at 128–29, 106 S.Ct. at 2808–09; *Gaffney v. Cummings,* 412 U.S. 735, 752–53, 93 S.Ct. 2321, 2331–32, 37 L.Ed.2d 298 (1973).

■ Count II also asserts a claim under the 15th Amendment, which prohibits abridgment of the right to vote "on account of race, color, or previous condition of servitude." The count lacks any factual allegations concerning racial discrimination, and therefore does not state a claim under the 15th Amendment. Therefore, Count II of the counterclaims is dismissed.

■ Finally, Count III of the counterclaims alleges 14th Amendment procedural due process violations—essentially that the counter-plaintiffs were denied their right to be heard or to a trial before either the Redistricting Commission or the Illinois Supreme Court—but does not identify any basis for such a right. This failure is a fatal flaw in such a claim. *Pardo v. Hosier,* 946 F.2d 1278, 1281 (7th Cir.1991) (two procedural due process inquiries, the first being "whether there exists a liberty or property interest which has been interfered with by the State") (quoting *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989)). Accordingly, Count III of the counterclaims is dismissed.

### CONCLUSION

For the above reasons, Counts II and III of the counterclaims are dismissed, the motion to dismiss Count I under Fed.R.Civ.P. 12(b)(6) is denied, and a ruling is reserved as to summary judgment on or preclusion of Count I.

IT IS SO ORDERED.