*In re* JODI SUMMERVILLE, a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Jodi Summerville, a Minor, by her Next Friend Patrick T. Murphy, Public Guardian of Cook County, Respondent-Appellant).

First District (1st Division)   No. 1—89—1136

Opinion filed November 6, 1989.

Patrick T. Murphy, Public Guardian, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, David R. Butzen, and Mark A. Shlifka, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Patrick Murphy, as public guardian (the Public Guardian), appeals a protective order forbidding public discussion of a child custody case and a subsequent ruling denying his motion to lift that order. The Public Guardian argues that the order violates the first amendment and is vague and overbroad. For the reasons below, we hold that the protective order violates the first amendment.

Jodi Summerville was born on June 29, 1986. When Jodi's parents could no longer care for her, they left Jodi with an aunt, but failed to provide for the infant's proper medical care. On October 20, 1986, the Illinois Department of Children and Family Services (DCFS) took Jodi into protective custody and was appointed temporary custodian. In June 1987, DCFS placed Jodi with foster parents Donna and Richard Appel. In June 1988, DCFS moved Jodi to the care of her maternal great uncle, the Reverend Zonis L. Dabney. The Appels objected to the move on the grounds that it was racially motivated: the Appels are white and the Dabneys are black. Jodi is biracial. The Public Guardian was appointed Jodi's guardian *ad litem*, and on September 19, 1988, the court ruled that Jodi should be left with the Dabneys to facilitate returning Jodi to her mother.

In a progress report dated November 17, 1988, the trial court expressed concern that Jodi's name and face had appeared on a television news report. The record shows that Mrs. Appel had permitted Jodi's face to appear on television, but she blamed DCFS for publishing Jodi's name. The trial court directed the Public Guardian to draft an order prohibiting communication with the media. The court then entered an order that stated:

> "All parties and all attorneys representing them are prohibited from communicating or discussing matters relating to this matter to any representatives of the media. This order is entered pursuant to Section 1—5(6) of the Juvenile Court Act."

See Ill. Rev. Stat. 1987, ch. 37, par. 801—5(6).

The next day, November 18, the Public Guardian presented his order, which the trial court entered (the protective order). The protective order states:

> "1. All parties and their respective counsel are prohibited

*from communicating to representatives of the media the name, address, or present placement of the minor respondent and from discussing the status of her current placement.*

*2. This order does not intend to prohibit the parties from discussing the implication of the case or in any other fashion limit legitimate First Amendment rights of the parties."*

Subsequently, in November 1988, after Jodi had been placed with the Dabneys, DCFS received an anonymous phone call accusing Reverend Dabney of child abuse. The caller was Margaret Henton, a former DCFS ward, who stated that Reverend Dabney had sexually abused her for three or four years while she was in a foster home in the early 1970s, and that Dabney might be the father of her child, who was presently a DCFS ward.

Jodi was examined at Mt. Sinai Hospital and La Rabida: both discovered injuries to the child's vagina that might have been caused by sexual penetration, although it was impossible to rule out other causes of the injuries. WBBM News in Chicago (Channel 2 News) subsequently reported the allegations of sexual abuse against Reverend Dabney, and the Public Guardian appeared in that report.

On December 20, 1988, the Public Guardian moved for a change of custody, based on Henton's allegations that Reverend Dabney had sexually abused her approximately 16 or 17 years ago. The parties agreed, however, that the allegations were irrelevant to Jodi's custody case until definite evidence established Reverend Dabney's guilt. The Public Guardian also moved to lift the protective order, and the DCFS filed a rule to show cause for contempt against the Public Guardian, alleging that his appearance on Channel 2 News violated the protective order. In a hearing in chambers, the trial court denied the motion to lift the protective order and, in response to the Public Guardian's arguments, interpreted the protective order to forbid any discussion of the allegations against Reverend Dabney:

> "COURT: This court interprets [paragraph 1 of the protective order] to mean that anybody discussing her current foster home is discussing her current placement, and as far as this court is concerned, that is what conduct is being prohibited.
>
> PUBLIC GUARDIAN: Just to clarify, is the court indicating that we cannot discuss the status of the current foster placement [*sic*] even at a time in which Jodi was not in that foster home?
>
> COURT: That's correct."

On January 11, 1989, the Public Guardian again moved to lift the protective order. After a series of continuances, the trial court denied

the Public Guardian's motion on May 2, 1989, and set a trial date for the rule to show cause. The Public Guardian appeals the protective order and the ruling of May 2, 1989.

The Public Guardian argues that the protective order of November 18, 1989, infringed on the first amendment rights of the parties and counsel. DCFS argues, without merit, that the protective order was appropriate to protect the interests of the minor child. DCFS also raises jurisdictional and procedural issues that shall be addressed first.

■ Appellate jurisdiction here is based on Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)), which allows interlocutory appeals from orders granting and refusing to dissolve injunctions, and requires filing of interlocutory appeals within 30 days of the order appealed from. DCFS argues that because notice of appeal was filed on May 4, 1989, the Public Guardian may not appeal from entry of the protective order, and that the issue before this court, therefore, is not whether the protective order violated the first amendment, but whether the ruling of May 2 properly denied the Public Guardian's motion to lift the protective order. The validity of the May 2 ruling, however, *depends* on the constitutionality of the protective order because an unconstitutional order is void. Thus, this court is not prohibited from and in fact must review the constitutionality of the protective order.

■ DCFS next argues that because the Public Guardian appealed from neither the protective order when it was entered, nor the ruling of December 20, 1988, denying the Public Guardian's first motion to lift the protective order, the protective order must stand under the "law of the case" doctrine, which states that a court's decision on a rule of law governs the same issue in subsequent stages of the same case. (*Christianson v. Colt Industries Operating Corp.* (1988), 486 U.S. 800, 817, 100 L. Ed. 2d 811, 830-31, 108 S. Ct. 2166, 2177-78.) But the protective order did not decide a rule of law. The protective order responded to the publicity surrounding the allegations of a racially motivated change of custody. The Public Guardian's subsequent motions to lift the order responded to the allegations of sexual abuse by Reverend Dabney. Thus, the "law of the case" doctrine is inapplicable; the Public Guardian's motions to lift the order were not merely successive attacks on a static ruling of law, but reasonable responses to changing circumstances.

■ DCFS also argues that the Public Guardian cannot challenge as unconstitutionally vague an order he drafted. But the Public Guardian does not challenge a ruling that arose from his own errone-

ous actions, such as neglecting to raise an issue at trial (*In re Estate of Bania* (1984), 130 Ill. App. 3d 36, 473 N.E.2d 489), advocating an improper theory at trial (*Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 475 N.E.2d 817), or deliberately withholding documents necessary for administrative review (*Johnson v. Board of Review, Department of Labor* (1985), 133 Ill. App. 3d 992, 479 N.E.2d 1082 (cases cited in DCFS's brief)). Rather, the Public Guardian challenges an order that carries the imprimatur of the court: the trial court directed him to draft the order and entered the order after it was submitted and reviewed. Therefore, the Public Guardian may challenge the protective order.

■ DCFS finally argues that because the Public Guardian failed to provide a record certified by the trial court, we must affirm, citing *Stony Island Church of Christ v. Stephens* (1977), 54 Ill. App. 3d 662, 369 N.E.2d 1313, and *Robinson v. Moore* (1975), 30 Ill. App. 3d 915, 332 N.E.2d 661. Those appeals were not dismissed, however, merely for failure to meet the formalistic requirement of certifying the record. Rather, the courts found they were unable to review the rulings of the trial court where the record submitted was fragmentary and its accuracy unverified. (See also *In re Estate of Rice* (1982), 108 Ill. App. 3d 751, 439 N.E.2d 1264 (record provided inadequate); *Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 403 N.E.2d 1239 (documents submitted not part of trial record); *Nenadic v. Grant Hospital* (1979), 75 Ill. App. 3d 614, 394 N.E.2d 527, *appeal denied* (1980), 79 Ill. 2d 626 (no record provided to appellate court).) Here, the record provided was certified by the clerk of the circuit court. The record is complete and sufficient to consider the substantive issues raised. Further, although DCFS did not stipulate to the accuracy of the record, it has made no specific challenges to the record's accuracy and has relied on it in its arguments. Thus, failure to comply with Supreme Court Rules 321 and 323 (107 Ill. 2d Rules 321, 323) neither defeats jurisdiction nor prevents this court from substantive review.

■ Turning to the substantive issues of the case, the Public Guardian argues that the protective order violates the first amendment and is vague and overbroad. DCFS argues without merit that the restrictions imposed by the protective order were reasonable, given the interest of protecting the minor child.

Both parties acknowledge that the protective order is a prior restraint on speech which, though not unconstitutional *per se*, requires close scrutiny and bears a heavy presumption against its validity. (*Organization for a Better Austin v. Keefe* (1976), 402 U.S. 415, 29 L. Ed. 2d 1, 91 S. Ct. 1575.) In Illinois, the standard for determining the

validity of a prior restraint was established in *Kemner v. Monsanto* (1986), 112 Ill. 2d 223, 492 N.E.2d 327, which held that a prior restraint on extrajudicial comments concerning a pending trial was permissible *only* if the record contained specific findings by the trial court establishing that the conduct of the parties or their attorneys posed a *"clear and present danger or a serious and imminent threat to the fairness and integrity of the trial."* (Emphasis in original.) *Kemner*, 112 Ill. 2d at 244. See also *Chicago Council of Lawyers v. Bauer* (7th Cir. 1975), 522 F.2d 242; *In re A Minor* (1989), 127 Ill. 2d 247, 537 N.E.2d 292.

■■ Here, the protective order fails to satisfy *Kemner*. The record contains no specific findings that the conduct of the parties or the attorneys created a clear and present danger or serious and imminent threat to the fairness and integrity of the custody proceeding. Nor do the facts of the case and surrounding circumstances support such findings. The Public Guardian's single communication with the media during the pendency of this case cannot be construed as an attempt to influence the court or corrupt the judicial process. The trial court, cognizant that both Jodi and the Public Guardian had appeared on the Channel 2 News, reiterated that the custody of Jodi would be decided solely according to her best interests. Clearly the extrajudicial activities neither influenced nor confused the judicial proceedings.

DCFS contends that the protective order was reasonable to prevent potential future harm and embarrassment to Jodi, and that consideration of the future impact of extrajudicial statements is proper. DCFS supports its position with a quote from *Nebraska Press Association v. Stuart* (1976), 427 U.S. 539, 563, 49 L. Ed. 2d 683, 700, 96 S. Ct. 2791, 2804: "[The impact of publicity on a case is] of necessity speculative, dealing *** with factors unknown and unknowable." But the *Nebraska Press Association* quote was part of an analysis that concluded that the possibility of future harm was insufficient to justify a prior restraint, a conclusion opposite that which DCFS urges. A finding of "possibilities," even if present, is not sufficient to support a conclusion that a serious or imminent threat to the administration of justice exists. (*Kemner*, 112 Ill. 2d at 245.) In the absence of specific findings of any serious threat to the integrity of the judicial process, we hold that the protective order violates the first amendment. Because we so hold, we need not address the Public Guardian's arguments that the protective order was unconstitutionally vague and overbroad.

In summary, the Public Guardian challenges the protective order prohibiting discussion of the present placement of Jodi Summerville,

which he argues operated as an unconstitutional prior restraint in violation of the first amendment. We find our jurisdiction is proper, and the record sufficient to decide the issues. We hold that in the absence of specific findings that the conduct of the parties or their attorneys created a clear and present danger, or serious and imminent threat to the fairness and integrity of the judicial process, the protective order violates the first amendment. Accordingly the ruling of May 2, 1989, is reversed.

Reversed and remanded.

CAMPBELL AND BUCKLEY, JJ., concur.