Pamela KOHL, and Joseph Kohl, Plaintiffs,

v.

Patrick T. MURPHY, both individually and in his capacity as Public Guardian, Defendant.

No. 90 CV 6596.

United States District Court, N.D. Illinois, E.D.

June 4, 1991.

On Motion to Reconsider June 27, 1991.

Steven Allen Greenberg, Mark T. Solmor, Steve A. Greenberg, Ltd., Chicago, Ill., for plaintiffs.

Randolph Mitchell Johnston, Cook County State's Attorney's Office, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is the motion of defendant Patrick T. Murphy ("Murphy") to dis-

miss all four counts of plaintiffs' complaint. For the reasons stated below, the motion is granted.

### FACTS

This case is the epilogue to a lawsuit litigated in 1990 in the Juvenile Division of the Circuit Court of Cook County (Case No. 90 J 3751). In that case, plaintiffs Pamela and Joseph Kohl executed a consent form relinquishing all parental rights and obligations to their adopted son, Anthony. The Kohls had cared for Anthony and his younger brother, Sam, since August 2, 1982, when the brothers were placed with them as foster children. At that time, Anthony was five and Sam was three years old. The Kohls adopted both boys in April 1986. Subsequently, family problems arose for which the Kohls sought and received individual and family counseling. According to the complaint, their efforts at counseling proved unsuccessful. The Kohls later consulted with the Illinois Department of Children and Family Services ("DCFS") and Hephzibah, a private counseling agency, and in 1989 decided to relinquish their parental rights and obligations to their son, Anthony. The plaintiffs filed no action regarding Sam.

In the action filed by the Kohls in Juvenile Court, the Kohls were represented by the Public Defender of Cook County[1] and the court appointed defendant Murphy, Public Guardian of Cook County, as guardian ad litem ("GAL") for Anthony. Other parties involved in the litigation were DCFS and the State's Attorney for Cook County. On March 8, 1990, after a hearing on the matter, the Kohls obtained a ruling permitting them to relinquish their parental rights and obligations to Anthony. Also in that proceeding, the Public Guardian's office requested an order directing the Kohls to cooperate in regularly scheduled visitation between Sam and Anthony. The presiding Juvenile Court judge declined to issue this proposed order, reasoning that it would be unenforceable.

After the March 8, 1990 hearing, according to the plaintiffs, Murphy "engaged in a systematic public relations campaign to smear the KOHLS. The Defendant acted in reckless disregard of the Kohls' right to privacy in revealing to the press and the public at large, personal information that was confidential." Complaint, ¶ 11.[2]

On November 13, 1990, the plaintiffs, through private counsel, filed this Complaint against Murphy, alleging four causes of action. Count I alleges that Murphy is liable to them under 42 U.S.C. § 1983 for violating their Fourteenth Amendment right to privacy. The remaining three counts of the complaint allege state law claims for: invasion of privacy—false light (Count II); invasion of privacy—private matter (Count III) and invasion of privacy under Article I, Section 6 of the Illinois Constitution (Count IV). In his motion to dismiss, defendant argues that Count I of plaintiffs' complaint fails to state a claim and that the remaining counts of the complaint should be dismissed for lack of federal subject matter jurisdiction.

### DISCUSSION

On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe ex rel. Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986). However, the court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint. *Coates v. Illinois State Board of Education*, 559 F.2d 445, 447 (7th Cir. 1977). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to

---

**1.** The record before the court does not reflect why the Kohls were represented by court-appointed counsel before the Juvenile Court.

**2.** In responding to defendant's motion to dismiss, plaintiffs elaborate on their allegations of Murphy's conduct, stating that after Juvenile Court proceeding concluded, Murphy granted interviews with the Cable News Network, appeared on television interview shows, and wrote an article for Good Housekeeping magazine (the first page of which plaintiffs attach to their memorandum). Memorandum in Support of Plaintiff's Response to Defendant's Motion to Dismiss ("Plaintiff's Response"), p. 7.

outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus,* 603 F.2d 1266 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.,* 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.,* 795 F.2d 591, 594 (7th Cir.1986).

■ As a preliminary matter, the court notes that the Complaint fails to articulate whether plaintiffs' § 1983 claim is asserted against Murphy in his "official" or "personal" capacity.[3] A § 1983 action against Murphy in his official capacity is, in essence, an action against Cook County. *See Kentucky v. Graham,* 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985); *Yeksigian v. Nappi,* 900 F.2d 101, 103 (7th Cir.1990). However, plaintiffs' failure to allege that any policy, custom or practice of Cook County played a part in the alleged violation of their federally protected rights precludes them from stating a § 1983 claim against Murphy in his official capacity. *See Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *see also Graham,* 473 U.S. at 166, 105 S.Ct. at 3105. Thus, plaintiffs' § 1983 action must proceed against Murphy, if at all, in his personal capacity.

■ To state a cause of action against Murphy in his personal capacity, plaintiffs must establish that defendant deprived them of a federally protected right and that the deprivation was carried out under color of state law. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). "A private defendant acts 'under color of state law' for the purposes of Section 1983 when [it] is 'a willful participant in joint action with the State or its agents.'" *Leahy v. The Board of Trustees of Community College District No. 508,* 912 F.2d 917, 921 (7th Cir.1990) (quoting *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 281 (7th Cir.1986) and *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980)). In his motion to dismiss, Murphy raises essentially two arguments. First, he argues that GALs are not amenable to suit under § 1983 because they do not "act under color of state law," an essential element of the § 1983 cause of action. Second, Murphy argues that the invasion of privacy allegations asserted by plaintiff are not actionable as violations of the due process clause of the Fourteenth Amendment.[4]

Murphy's first argument is that he is not amenable to suit under § 1983 in his personal capacity because in his role as GAL for Anthony Kohl, he was not acting "under color of state law" for the purposes of Section 1983. In support of his position, Murphy cites *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) as analogous authority. In *Dodson,* the Supreme Court held that a public defender does not act under color of state law for the purposes of § 1983 when performing a lawyer's traditional functions as counsel for a defendant in a criminal proceeding. The *Dodson* court stated that because a public defender owes an undivided loyalty to the interests of his client—which, in a criminal case, is necessarily

---

**3.** The case caption on the plaintiffs' complaint identifies the defendant as: "PATRICK T. MURPHY, both individually and in his capacity as Public Guardian of Cook County." The only substantive allegation in Count I concerning the capacity in which Murphy is being sued states, in relevant part: "Defendant, PATRICK T. MURPHY ("MURPHY"), is the Cook County Public Guardian, and at all times relevant MURPHY was acting in that capacity, under color of State

law, pursuant to Chapter 110½, Sections 11–10.1 and 13–5 of the Illinois Revised Statutes." Complaint, ¶ 6.

**4.** A third issue which defendant raises for the first time in his Reply Memorandum, is that of absolute immunity. This issue will also be addressed in this opinion.

adverse to the interests of the state—he is not deemed to be acting on behalf of the State or in concert with it. *Dodson*, 454 U.S. at 318, 102 S.Ct. at 449.

Murphy also cites several post-*Dodson* lower court opinions in which courts have applied the reasoning of *Dodson* in holding that GALs do not act "under color of state law" when acting as counsel for a minor in judicial proceeding before the juvenile court. *See Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir.1986); *Doe v. Bobbitt*, 665 F.Supp. 691, 695 (N.D.Ill.1987); *Clay v. Friedman*, 541 F.Supp. 500, 503 (N.D.Ill. 1982). These cases reasoned that GALs are analogous to public defenders because both have an absolute obligation to act in the interests of their client and thus cannot be said to act on behalf of the State or in concert with it.

Plaintiffs, however, argue that the post-*Dodson* cases cited by defendant are limited by the subsequent Supreme Court opinion in *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), which explained and narrowed *Dodson*. *Atkins* involved a § 1983 action brought by a prison inmate against a physician for alleged medical malpractice. The trial court granted summary judgment for the defendant, holding that the defendant—a private physician under contract with the state to provide medical services to inmates—did not act under color of state law in treating the plaintiff. The Fourth Circuit, relying on the *Dodson* case, affirmed, stating: "a professional, when acting within the bounds of traditional professional discretion and judgment, does not act under color of State law, even where, as in *Dodson*, the professional is a full-time employee of the State." *West v. Atkins*, 815 F.2d 993, 995 (4th Cir.1987), *rev'd* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The Supreme Court, however, reversed the Fourth Circuit, noting that *Dodson* was "the only case in which this Court has determined that a person who is employed by the State and who is sued under § 1983 for abusing his position in the performance of his assigned tasks was not acting under color of state law." *Atkins*, 487 U.S. at 50, 108 S.Ct. at 2255. The Court explained that the Fourth

Circuit had misread the *Polk County v. Dodson* opinion in extending its reasoning to other state employees. The Court stated:

> Of course, the Court of Appeals did not perceive the adversarial role the defense lawyer plays in our criminal justice system as the decisive factor in the *Polk County* decision. The court, instead, appears to have misread *Polk County* as establishing the general principle that professionals do not act under color of state law when they act in their professional capacities.

*Atkins*, 487 U.S. at 51, 108 S.Ct. at 2256–2257. The Court emphasized that the determining factor in the *Dodson* case was the adversarial relationship between the public defender and the State. *Id.; see Dodson*, 454 U.S. at 323, 102 S.Ct. at 452. The court further noted that the court must apply a functional test to determine whether an individual is acting under color of state law for the purposes of § 1983.

> It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner.

> \* \* \* \* \* \*

> It is the physician's function while working for the State, not the amount of time he spends in performance of those duties or the fact that he may be employed by others to perform similar duties, that determines whether he is acting under color of state law.

*Atkins*, 487 U.S. at 55–56, 108 S.Ct. at 2259.

■ Plaintiffs argue that under the reasoning of *Atkins*, GALs should be deemed to act under color of state law because, unlike public defenders, they do not function as adversaries of the State. "In the context of Juvenile Court, the Guardian Ad Litem will work in tandem with various State officials, including the State's Attor-

ney, and the Department of Children and Family Services, in achieving his stated purpose." Plaintiff's Response, pp. 5–6. Although plaintiffs acknowledge that GALs may sometimes function as adversaries of the state, they argue that such cases do not justify the creation of a blanket rule insulating GALs from § 1983 liability. *Id.* The court agrees with plaintiffs that the state action rule applicable to public defenders does not apply per se to GALs.

■ When the interests of their clients conflict with the interests of the State, GALs may become direct adversaries of the State. *See K.H. ex rel. Murphy v. Morgan,* 914 F.2d 846 (7th Cir.1990) (civil rights action filed against DCFS, a state agency, by Patrick T. Murphy, as GAL for a minor who was abused by her foster parents). In such a role, the function of the GAL is, for the purposes of § 1983, similar to that of the public defender—which, the Supreme Court has held, does not act "under the color of state law." Unlike the public defender, however, the function of the GAL is not *necessarily* adverse to the state. Therefore, it is not appropriate to extend the *per se* rule which *Dodson* established for public defenders, to GALs. This court concludes, therefore, that under the reasoning of *Atkins,* it is appropriate to apply the *Dodson* test to GALs only on a case-by-case basis.

■ In the present case, the parties' submissions do not adequately reflect the relationship between the defendant, Anthony Kohl, and the State in the Juvenile Court proceeding at issue. The court is unable to determine from the submissions before it whether the defendant, in his capacity as GAL for Anthony Kohl, functioned as an adversary to the State—and thereby acted "under color of state law." Therefore, Murphy has failed to meet his burden of persuasion on his assertion that Count I of the Complaint fails to state a claim because GALs do not act under color of state law.

■ In his Reply Memorandum, Murphy argues that "[a]ssuming arguendo, there is State action, then a GAL should receive the benefit of judicial immunity." Reply Mem-

orandum, p. 11. In support of this argument, Murphy cites *Myers v. Morris,* 810 F.2d 1437 (8th Cir.1987) and *Cok v. Cosentino,* 876 F.2d 1 (1st Cir.1989), in which the First and Eighth Circuits held that "nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process have absolute immunity for damage claims arising from their performance of the delegated functions." *Myers,* 810 F.2d at 1466–1467; *see Cok,* 876 F.2d at 3. The court notes, however, that the *Myers* and *Cosentino* opinions did not hold that GALs, by definition, are always entitled to absolute immunity for their actions. Rather, these cases applied the immunity doctrine only after determining that the GAL was functioning within his quasi-judicial role when he engaged in the disputed acts. The *Cok* court stated that:

> The functional approach taken in immunity cases, which requires an analysis of the nature of the duties performed, and whether they are "closely associated with the judicial process," *Cleavinger [v. Saxner],* 474 U.S. [193] at 200, 106 S.Ct. [496] at 500 [88 L.Ed.2d 507 (1985) ], support the conclusion that the guardian ad litem and conservator here were involved in the adjudicative process and shared in the family court judge's absolute immunity.

876 F.2d at 3. *See also Myers,* 810 F.2d at 1466–1467 (performing separate immunity analyses for each of the separate functions performed by the GALs—i.e., testifying before the family court, interviewing children, reporting the results of their interviews to law enforcement personnel, etc.). Similarly, the Third Circuit has declined "to grant a blanket of absolute immunity to all guardians ad litem in the performance of their duties," instead preferring to apply an immunity analysis on a case-by-case basis. *Gardner v. Parson,* 874 F.2d 131, 145–146 (3rd Cir.1989). The *Gardner* court stated:

> Furthermore, Supreme Court precedent in analogous cases and the reasoning of the soundly decided circuit cases, discussed above, counsels the adoption of a functional approach to determining

whether a guardian ad litem is absolutely immune. Under this approach, a guardian ad litem would be absolutely immune in exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court, not only in status or denomination but in reality. This does not exhaust the list of functions which would be absolutely immune, and each function would have to be analyzed on a case-by-case basis.

*Gardner,* 874 F.2d at 146.

■ Under the reasoning of the above authorities, the court finds that defendant's immunity argument does not suffice to carry his burden as movant on a motion to dismiss. Again, it is not clear from the submissions whether defendant was functioning in a "quasi-judicial" capacity when he allegedly engaged in the acts asserted in the Complaint. Notably, plaintiffs argue, in essence, that when Murphy engaged in the disputed acts, he was not acting within a "quasi-judicial" role. According to plaintiffs, "[t]hese nontraditional acts included, interalia, interviews with the Cable News Network (CNN), appearing on television interview shows, and writing an article for Good Housekeeping magazine." Memorandum in Response, p. 7. Although the court recognizes that state actors who perform quasi-judicial functions in a court proceeding may be entitled to immunity for public statements made following the conclusion of that action, that immunity may depend upon the content of the statements. In the present case, the parties have not supplied the court with the content of the post-hearing statements allegedly made by the defendant.[5] Thus, the court is unable to determine whether Murphy's immunity reaches these alleged statements. Because the non-moving party entitled to the benefit of any facts which it could reasonably in support of its claim, *Papapetropoulous,* 795 F.2d at 594, the defendant's motion to dis-

miss does not prevail on his immunity argument.

Finally, defendant argues that plaintiffs' complaint fails to state a claim because it does not allege that defendant deprived them of any federally protected right which has been recognized by the courts. Initially, the court notes that the extent to which privacy rights may be read into the Fourteenth Amendment has been the subject of some debate over the years. However, it is by now well established that: "While there is no 'right of privacy' found in any specific guarantee of the Constitution, the Court has recognized that 'zones of privacy' may be created by more specific constitutional guarantees and thereby impose limits upon government power." *Paul v. Davis,* 424 U.S. 693, 713–714, 96 S.Ct. 1155, 1166–1167, 47 L.Ed.2d 405 (1976). Here, both parties agree that the Fourteenth Amendment protects at least two categories of privacy interests: "[o]ne is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence and making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–877, 51 L.Ed.2d 64 (1977). These two privacy interests have been characterized as the "confidentiality" and the "autonomy" strands of the privacy right. *Shields v. Burge,* 874 F.2d 1201, 1209 (7th Cir.1989). The question presented here is whether the actions complained of by plaintiffs fall within one of these two categories.

■ The court finds that defendant's alleged actions clearly do not fall within the "autonomy" category. In the present case, the actions allegedly giving rise to plaintiffs' claims all took place *after* the family "decision" in this matter (the Kohl's decision to surrender parental rights and obligations to their adopted son, Anthony) had been made and adjudicated in favor of the plaintiffs. In short, the Kohls in fact exercised their freedom to seek a termination of their parental rights and obligations before defendant's allegedly unconstitutional acts

---

5. Because the resolution of the immunity and state action issues requires some inquiry into facts which are not apparent on the face of the

pleadings, these two issues would have been more appropriately raised on a motion for summary judgment.

ever took place. For this reason, all of the cases cited by plaintiffs on this issue are inapposite. *See* Memorandum in Response, pp. 10–11. These cases all involved situations in which some action by the defendants precluded the plaintiffs from exercising their autonomy in making certain basic family decisions (i.e., the decision to marry a person of another race, *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), etc.). In the present case, by contrast, plaintiffs do not allege that the defendant prevented them from exercising such autonomy in making their parental decision. Rather, the Complaint in this case appears to allege only that defendant impermissibly publicized their decision after it had been adjudicated. Thus, the facts of this case do not fall within the "autonomy" category of privacy rights.

 The court finds that the acts at issue in this case also do not fall within the "confidentiality" strand of the Fourteenth Amendment's "right to privacy" protection. Plaintiffs' primary authority in support of their confidentiality argument is *Fadjo v. Coon*, 633 F.2d 1172 (5th Cir.1981). In *Fadjo*, the plaintiff (Fadjo) had been named as beneficiary in six insurance policies which insured the life of Kenneth S. Rawdin. After Rawdin disappeared, both the insurance companies and the State's Attorney investigated his disappearance. The investigator for the State's Attorney, defendant Michael Coon, subpoenaed testimony and documents from Fadjo in conducting his investigation. During the investigation, Fadjo provided information concerning "the most private details of his life," after Coon assured him that his testimony would be kept completely confidential. *Fadjo*, 633 F.2d at 1174. Subsequently, Coon allegedly revealed the confidential information to the insurance companies' investigator, who in turn passed along the information to the insurance companies. In holding that Fadjo stated a claim under § 1983 for breach of right to privacy, the Fifth Circuit stated that:

> even if the information was properly obtained, the state may have invaded Fad-

jo's privacy in revealing it to [the insurance investigator] and the insurance companies. Alternatively, although the state could compel Fadjo's testimony it could delve into his privacy only in pursuit of aims recognized as legitimate and proper.

*Fadjo*, 633 F.2d at 1175. Implicit in the Fifth Circuit's opinion is the assumption that Fadjo had a reasonable expectation of privacy in the information which he was compelled to divulge under the power of subpoena. Fadjo did not volunteer his private information freely; rather, he gave his testimony in exchange for an express promise of confidentiality.

The *Fadjo* case is distinguishable from the present case for several reasons. First, unlike Fadjo, the "private information" at issue in this case was disclosed in the context of a court hearing in a lawsuit initiated by the Kohls. The Kohls were not in juvenile court under subpoena to serve some interest of the state; rather, they were in court to proceed on a petition which they voluntarily filed in their own interest—an interest clearly at odds with that of their minor child. Second, the information disclosed by the Kohls was not revealed under any promise, or reasonable expectation, of confidentiality. Although the Kohls allege that "[t]he court proceedings on March 8, 1990, were to be confidential, in accordance with Chapter 40, Section 1522, and Chapter 37, Section 801 et seq. of the Illinois Revised Statutes," [6] the court finds that these statutory provisions did not preclude the defendant from disclosing to the news media matters raised in the hearing after the final adjudication by the juvenile court judge.

The first statutory provision cited by plaintiffs, Chapter 40, Section 1522 (Illinois Domestic Relations Act) contains several subsections, none of which are applicable here. The first subsection (para. 1522) essentially requires adoption records to be impounded routinely by the court, thus preventing general public access to written court adoption records. This subsection, on its face, is limited to adoption proceed-

---

**6.** Complaint, ¶ 10.

ings, and in any event does not explicitly impose any speech restraints on participants in such proceedings. The other subsections of this provision (paras. 1522.1–1522.5) establish a "Biological Parent Registration Identification" registry, describe suggested forms to be used in this registry, and provide rules which require that the identity of the biological parents of adopted children be kept confidential under certain circumstances. The rules also provide criminal sanctions for persons who reveal any identifying information from this registry in violation of the rules. However, the "Biological Parent Registry" is not at issue here and the Illinois Domestic Relations Act does not explicitly create any other identifiable confidentiality rights which might apply here.

■ Similarly, the only provision of Chapter 37, Paragraph 801-1 et seq. (Illinois Juvenile Court Act) which remotely relates to any confidentiality issue here is Ill.Rev.Stat. ch. 37, para. 801-5(6) which states:

> The general public except for the news media and the victim shall be excluded from any hearing and, except for the persons specified in this Section, only persons, including representatives of agencies and associations, who, in the opinion of the court have a direct interest in the case or in the work of the court shall be admitted to the hearing. However, the court may, for the minor's protection and for good cause shown, prohibit any person or agency present in the

court from disclosing the minor's identity.

The court finds no language in this provision which prohibits participants in a child custody hearing (for termination of parental rights and obligations) from disclosing the contents of the hearing to the public. Although the court may, in the proper case, enter a protective order restricting such speech,[7] plaintiffs have not alleged that such an order was entered in their case. Further, the statute states that such orders may be entered "for the minor's protection."[8] Ironically, the alleged confidentiality issue here concerns statements made by the defendant speaking for the minor child. The court finds no authority for the proposition that the privacy interests of the parents in a hearing to terminate parental rights and obligations are protected as a matter of law by the Illinois Juvenile Court Act—particularly where the alleged invasion of privacy is initiated by someone speaking on behalf of a minor who is no longer the parents' child. When the Juvenile Court granted plaintiffs' petition to terminate their parental rights to Anthony, Pamela and Joseph Kohl ceased to be Anthony's parents. The court notes that once their petition was granted, the Kohls lost any standing they may have had to question whether the defendant's post-adjudication actions and statements were made in Anthony's best interests. Indeed, if Anthony was older, he might have chosen to make similar statements on his own.

■ The "private information" disclosed in the Kohls' termination of parental

**7.** The court notes that such protective orders are generally not favored in Illinois. *See* Op. Att'y Gen. No. S–645 at p. 185 (1973) ("[i]t is my opinion that a juvenile court may not restrict the news media from publishing that information which is obtained from their attendance at juvenile proceedings, unless, in a particular case, such publication would offer an immediate threat to the judicial proceedings"); *see also In re Summerville*, 190 Ill.App.3d 1072, 138 Ill. Dec. 346, 547 N.E.2d 513 (1st Dist.1989) (Protective order entered by Juvenile Court to prohibit public discussion of child custody case, deemed an impermissible prior restraint on speech in violation of First Amendment absent findings that such discussion would threaten fairness and integrity of the judicial process). Notably, the statements made by defendant in this case

were allegedly made *after* the adjudication of the Juvenile Court hearing. Thus, these statements could not be said to threaten the fairness of the "judicial process"—which in this case, had ended.

**8.** Indeed, it appears that the paramount consideration in all child custody and adoption proceedings (including termination of parental rights) is the interest of the child. *See In re Ashely K.*, 212 Ill.App.3d 849, 156 Ill.Dec. 925, 571 N.E.2d 905 (1st Dist.1991) ("A child's best interest is not part of an equation. It is not to be balanced against any another interest. In custody cases, a child's best interest is and must remain inviolate and impregnable from all other factors …").

**904**

rights and obligations hearing was not rendered confidential by the Illinois Juvenile Court Act or the Illinois Domestic Relations Act. Further, this information was not the subject of a protective order or promise of confidentiality. Therefore, the Kohls, unlike the plaintiff in *Fadjo*, did not reveal confidential information as a quid pro quo for some express guarantee of protection. Consequently, the plaintiffs' reliance on *Fadjo* is misplaced. Plaintiffs cite no other pertinent authority to support their claim that defendant's actions constitute a violation of their privacy rights under the Fourteenth Amendment. For this reason, Count I of plaintiff's Complaint fails to state a claim.

The remaining three counts in plaintiffs' Complaint are each grounded in state law and provide no independent basis for federal jurisdiction. The court, in its discretion, declines to exercise jurisdiction over these remaining state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Manor Healthcare Corp. v. Guzzo*, 894 F.2d 919, 922 (7th Cir.1990).

### CONCLUSION

For the reasons discussed above, Count I of plaintiffs' Complaint is dismissed for failure to state a claim pursuant to Fed.R. Civ.P. 12(b)(6) and the court declines to exercise jurisdiction over Counts II, III and IV.

IT IS SO ORDERED.

### ON MOTION TO RECONSIDER

Before the court is plaintiffs' motion to reconsider this court's order of June 3, 1991, in which the court granted the motion of Patrick T. Murphy ("Murphy") to dismiss this action. In that order, the court held that the plaintiffs had not stated a Fourteenth Amendment right to privacy claim under either the confidentiality or autonomy strand of that analysis. In their motion to reconsider, the plaintiffs, Pamela and Joseph Kohl, (collectively, the "Kohls"), argue that the court, in its autonomy analysis, failed to consider "the Defendant's strong arm tactics as evident by his

filing of a Cook County Circuit Court Complaint to force visitation between the two (2) Kohl children, as well as the Defendant's filing of a Motion to Vacate the prior adjudication in the Juvenile Court." Motion to Reconsider, p. 2. The Kohls argue that Murphy's filing of these post-adjudication pleadings "were an *attempt* by the Defendant *to affect* the Plaintiffs' autonomy in making parental decisions involving Sam, at a minimum, and furthermore, attempting to influence the Plaintiffs to reverse their prior decision with respect to the relinquishing of parental rights and obligations." *Id.* (Emphasis added.)

Motions for reconsideration serve a limited function. *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp. 656, 665 (N.D. Ill.1982) *aff'd*, 735 F.2d 1367 (7th Cir.1984). They are ordinarily granted only to correct clear errors of law or fact or to present newly discovered evidence which could not have been adduced during the pendency of the motion. *Publishers Resource v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985); *Refrigeration Sales Co. v. Mitchell–Jackson, Inc.*, 605 F.Supp. 6 (N.D.Ill.1983). Motions for reconsideration cannot be used to introduce new legal theories for the first time, or to raise legal argumentation which could have been heard during the pendency of the previous motion. *Publishers Resource, Inc.*, 762 F.2d at 561; *In re Sisson*, 668 F.Supp. 1196 (N.D.Ill.1987). Finally, Motions to reconsider are not at the disposal of parties who want to "rehash" old arguments. *Refrigeration Sales*, 605 F.Supp. at 7.

In their present motion, the Kohls essentially attempt to rehash the "autonomy strand" issue by merely reemphasizing certain facts which they believe support their position. As the case law cited above suggests, this type of argument is not an appropriate subject for a motion to reconsider. Moreover, the court is not persuaded by the substance of the motion. In this motion, the Kohls do not argue that Murphy prevented them from exercising their autonomy; rather, they allege only that Murphy *attempted to affect* their family decision-making process. Plaintiffs

have cited no cases in which an "attempt to affect" a basic family decision—which does not prevent that decision from being implemented—was deemed to constitute a violation of the Fourteenth Amendment. Moreover, the court finds it difficult to see how Murphy's filing of legal pleadings as guardian ad litem on behalf of the child (which, as it happens, were not granted) could be deemed an unconstitutional violation of plaintiffs' privacy rights. That a court-appointed guardian ad litem would seek an order from a juvenile court to authorize a visitation between two brothers, even after the adoptive parents had prevailed in an action to terminate their rights and obligations as to only one of the brothers, falls well within the realm of reasonable advocacy. The pleadings referred to by the Kohls as "strong arm tactics" appear to be no more than appropriately zealous advocacy undertaken by a guardian ad litem on behalf of his minor client.