**John LANIGAN, Sr., Plaintiff,**

v.

**VILLAGE OF EAST HAZEL CREST, Officer Robert Wasek, Chief Ray Robertson, and Sergeant Charles Krane, Defendants.**

No. 94 C 2818.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 26, 1996.

S. Ira Miller, S. Ira Miller, Chicago, IL, for John Lanigan, Sr.

Peter Jacob Magnani, Frank Calabrese, Magnani & Buck, Chicago, IL, for Village of East Hazel Crest, R. Wasek, Officer, Ray Robertson, Chief, Charles A. Krane.

## OPINION AND ORDER

NORGLE, District Judge.

Defendants previously moved this court to dismiss Plaintiff's Amended Complaint. On May 18, 1994, the court stayed discovery for the purpose of researching and filing motions on the issue of qualified immunity. The two motions filed addressed that concern and otherwise generally moved for a dismissal with prejudice. The court granted the motions on May 16, 1995. Before the court is a motion to reconsider. For the following reasons the motion is denied.

## FACTS

Plaintiff John Lanigan claims that a left hand turn he made eventually reached issues of constitutional magnitude. "But constitutional torts do not follow the exact contours of their common law counterparts." *Albright v. Oliver*, 975 F.2d 343, 346 (7th Cir.1992) *aff'd*, —— U.S. ——, 114 S Ct. 807, 127 L.Ed.2d 114 (1994). For starters, there is a law in the State of Illinois which pertains:

> The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute an immediate hazard, but said driver, having so yielded may proceed at such time as a safe interval occurs.

625 ILCS 5/11–902.

In his Complaint, Lanigan alleges that on March 4, 1994, at 8:35 a.m., after waiting for the stop-light to change, he made a left turn from southbound Wood Street to eastbound 171st Street in the Village of East Hazel Crest, Cook County, Illinois. He was directed to make the left turn by the driver of a

northbound car who was also waiting for the light at 171st and Wood.

Officer Wasek witnessed the maneuver and pulled Plaintiff over in a parking lot. Wasek blocked Plaintiff's vehicle with his squad car and proceeded to demand Plaintiff's driver's license. Lanigan wanted to know the nature of the alleged violation and asked "what did I do wrong." Wasek stated "you made an improper left turn." Lanigan suggested that a more courteous professional manner would have been to advise of the infraction first. Wasek expressed extreme displeasure and shouted "don't tell me how to handle my job." Lanigan advised the police officer that he had not made an improper left turn and that he did not have his wallet containing his driver's license with him. Lanigan requested that he be allowed to return to his place of business in Hazel Crest so that he could get his wallet with his driver's license and use the washroom—Lanigan's cancer surgery caused urinary problems. Officer Wasek refused to accede to any of those requests and, instead, sought information about the license. The Complaint then alleges Lanigan had to relieve himself into the pad which he wore as a result of not being able to control his bladder.

Lanigan's version of the event states that, in the process of writing Lanigan a ticket, Wasek repeatedly referred to and read from a book apparently for instruction on how to issue the citation. While Wasek was in the squad car working on the ticket, Lanigan turned his vehicle around and his bumper touched the turned tire of the squad car. Wasek got out of his vehicle advised Lanigan that he had crashed into the side of the squad car. Lanigan got out of his car. Wasek then called his dispatcher and said that someone had "just crashed into his squad car." Lanigan got back to his vehicle, intending to call for some help from his place of work on the car phone; however, he was too frightened to turn on his engine in order to use his car phone, as Lanigan believed the officer might think that he was trying to escape and shoot him.

According to the Complaint, several minutes later Chief Ray Robertson, the Chief of Police of the Village of East Hazel Crest, and Charles A. Krane, a Sergeant on the police force, arrived on the scene in two additional squad cars. They rushed over to Wasek who shouted "he crashed into the side of my car." Lanigan asked for the name of Wasek's supervisor. Chief Robertson responded, "I am officer Wasek's supervisor, I am the Chief of Police and you are the one with the problem." The Sergeant then directed Plaintiff to sit in his car, and the three officers examined the squad car for damage. Lanigan got out of his car, again, rubbed the bumper with his hand, and he discovered the "damage" was only salt discoloration. He then wiped the side of the squad car with his hand to show the officers there was no damage anywhere. Lanigan told them they should either show Plaintiff some damage or lock him up.

The Complaint states that Krane then began violently poking and pushing the Plaintiff, stating "we know what to do with you." Lanigan responded, "keep your hands off of me." Lanigan looked to the Chief for some assistance or some supervision. Robertson exhibited no desire to exert any supervision. Robertson advised Plaintiff "You have crashed into the officer's car and did not just touch his tire." Plaintiff argued that there was no damage, while the Chief argued that the Plaintiff had crashed into the squad car.

Finally, the Complaint alleges, Wasek put the bonding documentation (for not having driver's license) on his ticket-pad and asked Plaintiff to fill out the requested information and sign his name. Lanigan requested that it be set on the car, so that it would be stable enough for him to write. Wasek refused, ordered that he sign the document while officer Wasek was holding it, and rebuked, "You will do what you are told and sign it here the way I want it." As Lanigan attempted to fill out the document, Wasek moved the pad down and away from the Plaintiff, making it very difficult to sign his name. Robertson and Krane apparently said and did nothing. They exerted no supervision over Wasek. Wasek ultimately completed a ticket for failure to yield making a left turn. When the matter went to trial, Lani-

gan was found not[1] guilty of the charge.

## DISCUSSION

� Motions for reconsideration serve a limited function. They are ordinarily used to correct clear errors of law or fact or to present newly discovered evidence which could not have been adduced during the pendency of the motion. *Souter v. International Union, UAWA,* 993 F.2d 595, 599 (7th Cir. 1993); *Kohl v. Murphy,* 767 F.Supp. 895, 904 (N.D.Ill.1991). They cannot be used to introduce new legal theories for the first time, to raise legal argumentation or present evidence that could have been adduced during the pendency of the original motion. *Kohl,* 767 F.Supp. at 904. Finally, "rehashing" of old arguments is prohibited when presenting a motion to reconsider. *Refrigeration Sales Co. v. Mitchell–Jackson, Inc.,* 605 F.Supp. 6, 7 (N.D.Ill.1983).

▄ Lanigan was not required to go into great detail or particularity in his Complaint. But if a plaintiff does plead particulars, and those particulars show that he has no claim, then he is out of luck—he has pleaded himself out of court. *Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 78 (7th Cir.1992); *Conn v. GATX Terminals Corp.,* 18 F.3d 417, 419 (7th Cir.1994); *Fryman v. United States,* 901 F.2d 79, 82 (7th Cir.1990). He is not saved by having pleaded a legal conclusion that, if consistent with the facts would establish his right to relief; for he has already shown that that conclusion is inconsistent with the facts. *Benson v. Cady,* 761 F.2d 335, 338 (7th Cir.1985); *cf. Jones v. Morris,* 777 F.2d 1277, 1280 n. 5 (7th Cir.1985).

Plaintiff does not claim that he was physically injured by the "violent" poke or push. The issue is whether a peace officer, faced with a rising level of confrontation with a citizen after an offense is committed in his presence, may use limited non-injurious physical force to quell the situation where previous assertions and displays of authority have failed.

▄ The court directed the parties to examine the doctrine of qualified immunity and assess its applicability to this case. Because the immunity defense is raised in a motion to dismiss under Rule 12(b)(6), the well-pleaded allegations of the Complaint and the inferences that may be reasonably drawn from those allegations are accepted as true. *Triad Associates, Inc. v. Robinson,* 10 F.3d 492, 495 (7th Cir.1993); *McMath v. City of Gary,* 976 F.2d 1026, 1031 (7th Cir.1992). The doctrine of immunity, whether absolute or qualified, "spare[s] a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

▄ But before we even reach the immunity claim, Plaintiff's Complaint must state a claim on which relief may be granted. As the Supreme Court emphasized in *Siegert v. Gilley,* "[A] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is clearly established at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." 500 U.S. at 232, 111 S.Ct. at 1793; *see also Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994). If a plaintiff's allegations, even when accepted as true, do not state a cognizable violation of a constitutional right, then the defendant is entitled to qualified immunity. As the Supreme Court has noted, the "[d]ecision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793. This court has already outlined the doctrine of qualified immunity in a number of its opinions:

> The doctrine of qualified immunity shields government officials from civil liability when they perform discretionary functions to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known...."

---

1. In the original order a typographical error excluded "not."

The Seventh Circuit has articulated a two step analysis for assessing the doctrine of qualified immunity: " '(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?' " .... [T]he crucial inquiry here is "whether the contours of the alleged right were sufficiently clear at the time of the conduct so that a 'reasonable official would understand that what he is doing violates that right.' "

*Gavin v. McGinnis,* 866 F.Supp. 1107, 1112 (N.D.Ill.1994) (citations omitted). "The doctrine of qualified immunity shields public officials ... from damages unless their conduct was unreasonable in light of clearly established law." *Elder v. Holloway,* — U.S. —, —, 114 S.Ct. 1019, 1021, 127 L.Ed.2d 344 (1994).

■ The court first considers the merits of Count I, which seeks relief from Wasek. Count I complains that Wasek violated Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights. The Complaint admits that Lanigan violated at least one state law governing the operation of motor vehicles.

The facts against Wasek state a claim that he was grumpy and discourteous. However, his alleged conduct does not set out a constitutional violation. Wasek's actions are not cognizable as a violation under § 1983; his conduct was not so outrageous as to constitute the infliction of emotional harm under § 1983, nor any other tort of constitutional dimension. Faced with an irate citizen, a peace officer must deal with the citizen and the situation in a professional manner. Yet, treating a citizen discourteously or allowing uncomfortable situations to linger, though not condoned by this court, are not constitutional violations. To hold otherwise would have the effect of chilling police activities including the enforcement of basic traffic and licensing statutes. Accordingly, Count I is dismissed.

■ Count II seeks both compensatory and punitive relief from Krane. The facts alleged as against Krane are limited. The Complaint states that upon Krane's arrival, he ordered Lanigan to sit in his car, he examined the squad car, and he violently poked and pushed Lanigan stating, "we know what to do with you." But what was actually done following that statement was the issuance of a ticket. The key issue is whether the violent poking and pushing alleged sets out a statutory or constitutional violation of excessive force. "To maintain a cause of action under § 1983, a plaintiff must present sufficient evidence to establish the following two elements: (1) that the defendants were acting under color of state law, and (2) that their conduct deprived the plaintiffs of rights secured by the Constitution or laws of the United States." *Sledd v. Lindsay,* 864 F.Supp. 819, 827 (N.D.Ill.1994) (citing *Parratt v. Taylor,* 451 U.S. 527, 533, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). Krane does not contest that he was acting under color of state law; thus, the focus is on the alleged deprivation of rights. Under the aforementioned standards for qualified immunity, the "inquiry within the Fourth Amendment context requires the court to determine 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Sledd,* 864 F.Supp. at 828 (citing *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)). Whether a particular amount of force is reasonable is examined within the setting in which it was administered, rather than with hindsight. *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham,* at 396, 109 S.Ct. at 1872). Claims of violations during detention are properly analyzed under the Fourth Amendment rather than the Fifth Amendment. While examining a claim of use of excessive force the Supreme Court recently held that "[b]ecause the Fourth Amendment provides an explicit textual source of constitution protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notice of 'substantive due process,' must be the guide for analyzing [claims of

excessive force]." *Graham,* at 395, 109 S.Ct. at 1871. The Fourth Amendment covers claims for excessive force under a reasonableness standard by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests at stake. *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642–43, 77 L.Ed.2d 110 (1983).

For purposes of a motion to dismiss, the court must take the factual allegations as true. The well pleaded facts of the Complaint illustrate that Officer Wasek had a reasonable basis to stop Lanigan's car for a minor traffic violation, failing to yield when turning left. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Wasek had the right to tell the driver to produce his driver's license. When the driver did not produce the license, the officer had probable cause to believe that Lanigan had violated the Illinois law. There is no dispute on the material fact that Lanigan did not hand over a driver's license to Wasek.

In *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), the Supreme Court reviewed a conviction for unlawful possession of marijuana which began with an arrest of a citizen for driving his automobile without a valid operator's license in his possession. In that case, unlike the matter before court, the driver was taken to the station house for further inquiry because the officer had probable cause to arrest upon learning that the driver did not have his license in his possession. In *Gustafson,* the officer exercised his discretion to take the driver into custody and transport him although the officer was not required to do so by police regulations. *See Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). In this case, Wasek and Krane exercised that discretion and did not take Lanigan to the station house. They could have. Several circuits have held that failure to have a permit available on request by a peace officer is a misdemeanor in his presence, permitting the issuance of a traffic ticket or an arrest. *See Gullett v. United States,* 387 F.2d 307 (8th Cir.1967), *cert. denied,* 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1968); *Sumrall v. United States,* 382 F.2d 651 (10th Cir.1967); *Myricks v. United States,* 370 F.2d 901 (5th Cir.1967). Additionally, given even the meager allegations in the Complaint, probable cause existed regarding the violation of Illinois traffic and licensing laws. 625 ILCS 5/6–101, 5/6–112. In pertinent part, those sections provide as follows: "For the purposes of this Section 'display" mans the manual surrender of his license into the hands of the demanding officer for his inspection thereof." *See also* 625 ILCS 5/11–203 (Obedience to Officers) ILCS 5/11–202 (Required Obedience to Traffic Laws); *see People v. Flowers,* 111 Ill.App.3d 348, 67 Ill.Dec. 203, 444 N.E.2d 242 (1982); *People v. Morrison,* 57 Ill.App.3d 468, 15 Ill.Dec. 174, 373 N.E.2d 520 (1978).

A law enforcement officer has probable cause to make an arrest when "the fact and circumstances within [his] knowledge and of which [he had] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *see also Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). This is necessarily a fact-intensive inquiry that does not lend itself to definitive legal rules. *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *Maxwell v. City of Indianapolis,* 998 F.2d 431, 434 (7th Cir.1993). Whether an officer had probable cause to make an arrest generally will present a question for the jury, although the court can decide it when the material facts are not disputed. *Maxwell,* 998 F.2d at 434; *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir.1989). Probable cause can be found as a matter of law, however, only when the facts permit but one conclusion—that is, "only when no reasonable jury could find that the officer[ ] did not have probable cause" to make an arrest. *Maxwell,* 998 F.2d at 434.

Within limitations, Lanigan had the right to discuss the issuance of the tickets for failing to yield when turning left, failing to have a driver's license when driving, and for driving his vehicle against the squad car. Bringing personal health matters to the offi-

cer's attention was Lanigan's decision. Under the circumstances, it was not unreasonable for Officer Wasek to call for additional officers to come to the scene. Yet, the display of authority with the arrival of two additional officers did not mollify the situation. That Lanigan felt he needed to call for help and that he feared he might be shot reveals much about the rising level of the confrontation. Moreover Lanigan disobeyed Krane's order to stay in his car. Lanigan's statement to the officers suggesting that he be locked up is a fact worth noting. The officers rejected Lanigan's ultimatum. Lanigan was not handcuffed, locked in his car or the squad car or taken to the police station. Lanigan got in and out of his car several times. He was not cited for driving his car against the squad car. He received only one ticket, signed an agreement to appear in court, and was eventually free to leave the scene.

▇▇▇ Lanigan does not allege that he was physically injured by the poke or the push. While excessive force does not require injury, *Lester v. City of Chicago,* 830 F.2d 706 (7th Cir.1987), no injury gives weight to the assertion of no excessive force, *see Meyer v. Robinson,* 992 F.2d 734 (7th Cir.1993). Given the totality of the circumstances, Lanigan's Complaint does not state a claim of a violation of a federal statute or of the Constitution. Additionally, the doctrine of qualified immunity shields all three officers because their conduct was not unreasonable in light of clearly established law at that time. Accordingly, the motion to dismiss Count II is granted.

▇▇▇ Regarding Counts III and IV, the court addresses the issue of supervisory liability. The Seventh Circuit Court of Appeals recently addressed this issue:

It is well settled that the doctrine of respondeat superior may not be employed to impose § 1983 liability on a supervisor for the conduct of a subordinate that violates a citizen's constitutional rights. Supervisory liability may attach, however, where a supervisor, with knowledge of a subordinate's conduct, approves of the conduct and the basis for it.

*Kernats v. O'Sullivan,* 35 F.3d 1171, 1182 (7th Cir.1994) (citations omitted). Here, Robertson, the Chief of Police, arrived at an already escalating situation. He observed as Krane poked and pushed Lanigan and, by his silence, acquiesced in the conduct. However, since Krane's conduct is not enough, as discussed *supra,* to rise to the level of a constitutional violation neither can Robertson's. The motion to dismiss Count III is granted.

▇▇▇ Concerning the city, a municipality will not be held liable unless the plaintiff pleads that the city has a policy of infringing on civil rights. A local governmental unit is subject to suit under 42 U.S.C. § 1983 because it is deemed a "person" within the meaning of that provision. *Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). The Supreme Court has consistently interpreted this language as barring *respondeat superior* liability on the part of a local governmental unit. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735–36, 109 S.Ct. 2702, 2722–23, 105 L.Ed.2d 598 (1989); *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989); *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *see also Auriemma v. Rice,* 957 F.2d 397, 399 (7th Cir.1992) ("Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents."). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037; *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion) (quoting *Adickes v. S H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)); *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985). Lanigan did not plead that the Village of East Hazel Crest had such a policy of infringing on civil rights. Accordingly, the claims against the Village of East Hazel Crest are dismissed.

*CONCLUSION*

For the foregoing reasons, the court denies Plaintiff's motion to reconsider the granting of Defendants' motion to dismiss with prejudice all counts against defendant. Under the specific facts pleaded, if the Plaintiff has a claim at all, it is not for a violation of a federal statute or the United States Constitution.

IT IS SO ORDERED.