**Jay M. TROUT, Plaintiff,**

v.

**Joseph FREGA, Joseph Heinrich, Robert Steinman, and Jeffrey Wolf, Defendants.**

**No. 94 C 4335.**

United States District Court, N.D. Illinois, Eastern Division.

May 2, 1996.

Mark T. Solmor, Friedman and Olson, Ltd., Chicago, IL, Blake Wolfe Horwitz, Law Offices of Blake Horwitz, Chicago, IL, Anthony R. Elman, Law Office of Fred W. Elmond, Mundelein, IL, for Jay M. Trout.

Elizabeth Ann Knight, George P. Smyrniotis, Knight, Hoppe, Fanning & Knight, Ltd., Des Plaines, IL, for Joseph Frega, Joseph Heinrich, Robert Steinman and Jeffrey Wolf.

Richard Charles Huettel, Cassiday, Schade & Gloor, Chicago, IL, Richard A. Barrett, Jr., Cassiday, Schade & Gloor, Wheaton, IL, for City of Geneva.

### *OPINION AND ORDER*

NORGLE, District Judge:

Before the court is Defendants' Motion for Summary Judgment. For the following reasons, the motion is granted.

### I. *Background* [1]

Plaintiff Jay M. Trout ("Trout") filed a one-count Amended Complaint against Defendants Joseph Frega ("Frega"), Joseph Heinrich ("Heinrich"), Robert Steinman ("Steinman"), and Jeffrey Wolf ("Wolf") (collectively, "Defendants"). Trout asserts a claim under 42 U.S.C. § 1983 which arose out of his arrest on February 26, 1993.

On that day, Trout was exercising at the Powerhouse Gym in Geneva, Illinois. Trout is 6′3″ and weighs approximately 260 pounds. Defendants, all police officers from the City of Geneva, Illinois, went to the gym to arrest Trout pursuant to a warrant. The warrant issued based on Trout's alleged phone harassment of his former girlfriend. Before the arrest, the other officers had indicated to Wolf that Trout had threatened his girlfriend. When Defendants arrived at the gym, Trout was lifting weights on a curling machine in the gym.

---

1. The court derives the following facts from Defendants' uncontested Local Rule 12(M) statement of material facts. Where a plaintiff fails to disagree with a defendants' 12(M) statement by referring to specific instances in the record, the 12(M) facts are deemed admitted. *Flaherty v. Gas Research Inst.,* 31 F.3d 451 (7th Cir.1994).

Trout stopped lifting weights, left the machine, and complied with Defendants' instructions. Defendants told Trout that he would be handcuffed and Trout replied that he did not intend to resist arrest, but he verbally objected to the handcuffing. Trout states that, at this point, he also informed Wolf that he had a previously-fractured wrist. Wolf denies receiving such information. Although Trout did have an unhealed 1991 "scaphoid" fracture, he exhibited no physical manifestation of this fracture, such as a cast, brace, or bruising, before or after he left the curling machine. Wolf, who is 5'9" and weighs approximately 157 pounds, handcuffed Trout. Wolf did not observe that Trout was in any pain prior to or during the arrest. Trout did not complain that the cuffs were too tight or that he was in pain. No other touching of Trout occurred during the course of his arrest. The handcuffing by Wolf was the only force used against Trout by any of the Defendants at any time. Wolf stated that, in making the decision to handcuff Trout, Wolf considered Trout's size vis-a-vis Wolf's size, prevention of Trout's escape, ensuring the officer's safety, and Trout's history of involvement in domestic disputes with, and threatening telephone harassment of, Trout's own girlfriend.

Trout produces no evidence connecting Wolf's act of handcuffing with the subsequent fracture. Trout went immediately to Delnor Community Hospital after he was released on February 26, 1996. The Delnor records and radiology report reference a "scaphoid fracture." Subsequent to his same-day release from Delnor, Trout was treated by Dr. Wittenstrom, who found a radial styloid fracture, in addition to the preexisting scaphoid fracture. Dr. Wittenstrom testified that a radial styloid fracture usually results from a fall on the hand or the wrist, and that he was unsure about whether handcuffing (proper or

excessively forceful) could cause such a fracture.

## II. Discussion

■ Trout sues Defendants in their individual capacities.[2] Trout's Complaint alleges that Defendants violated 42 U.S.C. § 1983 by causing him further wrist injury when handcuffing him during his arrest. Defendants move for summary judgment, arguing that qualified immunity and an absence of constitutional deprivation effectively shield them from liability.

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To defeat a motion for summary judgment, the non-movant must marshal evidentiary facts sufficient to raise a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Individual liability under § 1983 must arise from direct personal involvement, and cannot be vicarious or based on a theory of *respondeat superior.* See *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). There must be a showing that the defendant committed, or at least encouraged, the alleged misconduct. *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983). In other words, an individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation. *Id.* Frega, Heinrich and Steinman argue that, as to them, Trout cannot satisfy the personal involvement requirement: there is no evidence that

**2.** Defendants argue that the court should interpret the Complaint as suing Defendants in their official capacities. Courts presume an official capacity suit where, as in the instant case, (1) the complaint fails to specify whether it is directed at the defendants in their individual or official capacities and (2) indicia of an official custom or policy are present. *Kolar v. County of Sangamon,* 756 F.2d 564, 567 (7th Cir.1985). Although Trout both fails to specify and indicates official capacity (the Complaint pleads that Defendants acted under authority of office, statutes, ordinances, regulations, and customs of the State of Illinois), Trout's response argues that he sues Defendants in only their individual capacities. As such, the court conducts only individual capacity analysis.

anyone other than Wolf applied any force to Trout during the arrest; Trout himself testified that Wolf was the only Defendant to use force during the arrest.

 Trout argues that the mere presence of Frega, Heinrich and Steinman at the scene gave rise to their liability, because they acted with deliberate indifference for Trout's welfare. However, beyond this unsupported argument, Trout has demonstrated no causal link between those three officers and the complained of force.[3] As such, even if that force was excessive, there is no genuine issue of material fact as to those officers. Presence is not enough. The mere presence of the three officers, without more, does not constitute their requisite § 1983 personal involvement in any constitutional violation which may have occurred. *See Apostal v. City of Crystal Lake*, No. 94 C 50068, 1995 WL 692680, at *6 (N.D.Ill. Nov. 22, 1995).

 Assuming arguendo that all officers were linked to the alleged violation, all are nevertheless entitled to qualified immunity. Whether Defendants are entitled to qualified immunity is a question of law. *Jones by Jones v. Webb*, 45 F.3d 178 (7th Cir.1995). The doctrine of qualified immunity shields government officials from civil liability when they perform discretionary functions to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Lanigan v. Village of E. Hazel Crest*, 913 F.Supp. 1202 (N.D.Ill.1996) (citation omitted). In determining whether the rights were clearly established at the time of the alleged violation, courts must ask "whether the law was clear in relation to the specific facts" confronting the officers when they acted. *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir.1987).

 Inquiry within the "excessive force" context requires the court to determine whether police officers' actions were objectively reasonable, in light of facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Lanigan v. Village of E. Hazel Crest*, 913 F.Supp. 1202 (N.D.Ill.1996). Courts determine whether a particular amount of force is reasonable by considering the setting in which it was administered rather than hindsight. *Sledd v. Lindsay*, 864 F.Supp. 819, 827 (N.D.Ill.1994). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, subjects defendants to § 1983 liability for excessive force. *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir.1987).

 Claims of violations during arrests are properly analyzed under the Fourth Amendment. *Lanigan*, 913 F.Supp. at 1207. While examining a claim of use of excessive force, the United States Supreme Court recently held that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notice of 'substantive due process,' must be the guide for analyzing [claims of excessive force]." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).

 The Fourth Amendment covers claims for excessive force under a reasonableness standard by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests at stake. *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). Plaintiffs have the burden of showing that the right allegedly violated was clearly established for purposes of denying an officer qualified immunity from a claim under § 1983. *Sledd,* 864 F.Supp. at 827. Plaintiffs must show that reasonable officers, confronted with the same facts at the same time, would have known that they were violating constitutional

---

**3.** The court notes that Trout has argued against himself in misstating the applicable standard. Rather than consider whether the officers were deliberately indifferent, the court must only determine whether they acted reasonably. *See infra.*

rights. *Schertz v. Waupaca County,* 875 F.2d 578, 583 (7th Cir.1989). This requires plaintiffs to offer either closely analogous cases, or to evidence that the officer's conduct so patently violates a constitutional right that reasonable officers would have known of the violation without guidance from the courts. *Id.*

■ Although many cases hold that handcuffing is a reasonable restraint, neither the court nor the parties have found cases stating that it is unreasonable. *See Soares v. State of Conn.,* 8 F.3d 917 (2d Cir.1993) (stating that handcuffing is reasonable in many, if not most, arrest situations, even where the arrestee does not attempt to resist or flee). The decision to handcuff, and the choice of method to use in doing so, is discretionary. *Id.* Officers consider many factors when making that decision: the severity of the crime, whether the suspect poses a threat to the officer or others, and whether the arrestee attempts to flee. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

■ In determining whether qualified immunity applies to officers executing warrants, courts should not require officers to err on the side of caution out of fear of being sued. *Sledd,* 864 F.Supp. at 827. "Obviously, police officers must use some physical force in handcuffing an arrestee. Likewise, in order to be effective, the handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Apostal,* 1995 WL 692680 at *5 (granting summary judgment in favor of officers where court found that officers acted reasonably in handcuffing and pushing plaintiff at time of his cooperative arrest pursuant to a warrant; plaintiff failed to show that injuries were caused by handcuffing and pushing). Officers need not apply the *least* amount of force necessary, rather, they need to apply a *reasonable* amount of force. *Id.* (citation omitted). *See also, Platek v. Village of Lisle,* No. 92 C 7479, 1994 WL 444787 (N.D.Ill. Aug. 14, 1994) (determining that wrist grabbing and arm twisting, which caused bruises during handcuffing, was not excessive).

In the instant case, given the totality of the circumstances, the court finds that the officers acted reasonably. Wolf was aware that Trout had allegedly harassed Trout's girlfriend. Wolf knew of at least one violent domestic disturbance between Trout and that girlfriend. Trout was four inches taller and approximately one-hundred pounds heavier than Wolf. Trout had been weight-lifting immediately before the arrest. Although Trout may have protested about an injury, his wrist showed no observable signs of prior injury. Considering all these factors, Wolf made the discretionary decision to handcuff Trout. There is no evidence that in doing so, Wolf failed to exercise proper procedure. (Indeed, Trout has not even shown that any injury resulted.[4])

Neither the parties nor the court located analogous caselaw holding that handcuffing alone is unreasonable. Even if all facts presented by Trout are true,[5] the court finds that Wolf's actions were reasonable in light of clearly established case law, as was the presence of his codefendants at the scene. Thus, Wolf and his codefendants are entitled to qualified immunity. Since a reasonable officer in Defendants' situation would have

4. The court notes that Trout has introduced no evidence showing that the handcuffing or his arrest aggravated the preexisting scaphoid fracture. The scaphoid fracture is the only injury shown in the Delnor records. Trout has not linked his subsequent radial styloid fracture to the arrest. Dr. Wittenstrom does not know whether the radial styloid fracture could have occurred absent force, nor does he know whether proper police procedure for handcuffing could have caused that fracture. Still, the court recognizes that extent of injury is irrelevant to Fourth Amendment analysis, particularly where there is no evidence establishing a causal relationship between the injury and the alleged force. *Brow-*

*nell v. Figel,* 950 F.2d 1285, 1292–93 (7th Cir. 1991). The court must focus on whether the officers acted reasonably. *Id.*

5. Citing *Zumbroegel v. City of Dearborn Heights,* 705 F.Supp. 358, 360–363 (E.D.Mich.1989), Trout asserts the he has presented facts constituting a violation of his right to be free from excessive force and warranting denial of Defendants' motion for summary judgment. However, the court notes that Trout does not refer the court to where those facts occur in the record, nor has he submitted a 12(n) statement setting forth a version of the facts different from Defendants' account.

believed the conduct lawful in light of clearly established law and information available to him at the time. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### III. *Conclusion*

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.